James Patrick Shea, Esq.
Nevada Bar No. 405
Bart K. Larsen, Esq.
Nevada Bar No. 8538
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Email:  jshea@shea.law
          blarsen@shea.law

Patrick F. Lennon, Esq. (*Admitted Pro Hac Vice*)
New York Bar No. 2521391
Kevin J. Lennon, Esq. (*Admitted Pro Hac Vice*)
New York Bar No. 2810885
**LENNON MURPHY & PHILLIPS, LLC**
420 Lexington Ave, Suite 300
New York, New York 10170
Telephone: (212) 490-6050
Email:  plennon@lmplaw.net
          kjl@lmplaw.net

*Attorneys for Traxys North America LLC*          *Attorneys for Traxys North America LLC*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re METAL PARTNERS REBAR, LLC, | Case No. 20-12878-abl |
| Debtor. | Chapter 11 (Lead Case) |
| ☒ Affects Metal Partners Rebar, LLC<br>☒ Affects BGD LV Holding, LLC<br>☐ Affects BRG Holding, LLC<br>☐ Affects BCG Ownco, LLC | Jointly Administered with:<br><br>Case No. 20-12876-abl<br>Case No. 20-12879-abl<br>Case No. 20-12880-abl |

| | |
|---|---|
| TRAXYS NORTH AMERICA LLC, | **Adversary Proceeding No. 21-01005-abl** |
| Plaintiff, | |
| vs. | |
| METAL PARTNERS REBAR LLC, BGD LV HOLDING, LLC, INTERMETAL REBAR, L.L.C., JOSE CARRERO, JPMORGAN CHASE BANK N.A. and ADR REBAR, LLC, | **SECOND AMENDED COMPLAINT** |
| Defendants. | |

Plaintiff, Traxys North America LLC ("Traxys"), by its attorneys, as and for its Second Amended Complaint, respectfully alleges the following:

**JURISDICTION AND VENUE**

1.     This action was originally filed in the United States District Court for the Southern District of New York, which had jurisdiction over this action pursuant to 28 U.S.C. 1332 as the

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1   parties are completely diverse and the amount in controversy exceeds $75,000 exclusive of fees and

2   costs.

3       2.    This action was transferred from the United States District Court for the Southern

4   District of New York to the United States District Court for the District of Nevada by stipulation of

5   the parties and subsequently referred to the United States Bankruptcy Court for the District of

6   Nevada pursuant to 28 U.S.C. § 1452(a), Rule 9027 of the Federal Rules of Bankruptcy Procedure,

7   and Rule 9027 of the Local Rules of Bankruptcy Practice for the United States Bankruptcy Court for

8   the District of Nevada.

9       3.    This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b)

10  and § 157.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

11      4.    Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. §

12  1409.

13  **THE PARTIES**

14      5.    Plaintiff Traxys is a Delaware limited liability company having an address at 299

15  Park Avenue, New York, New York 10171.

16      6.    Traxys' sole member is a citizen of Luxembourg.

17      7.    Traxys is in the business of, inter alia, sourcing, marketing and distributing metal

18  commodities, including steel rebar products, and providing trade financing for such activities.

19      8.    At all relevant times, Defendant Metal Partners Rebar LLC ("MPR") was an Illinois

20  limited liability company with its principal office at 302 Knights Run Ave., Suite 1104, Tampa,

21  Florida 33602.

22      9.    Upon information and belief, at all relevant times MPR's members were Frank

23  Bergren and Douglas R. Anderson, Illinois citizens, and Jose Carrero, a citizen of Florida.[1]

24      10.    At all relevant times, MPR was in the business of fabricating, marketing and

25  distributing steel rebar products to the construction trade.

26

27

28  [1] Upon information and belief, MPR's current sole member/manager is Jose Carrero, a citizen of Florida.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

11. At all relevant times, Defendant BGD LV Holdings, LLC ("BGD") was a Nevada limited liability company with its principal office at 3101 East Craig Road, North Las Vegas, Nevada 89030.

12. Upon information and belief, at all relevant times BGD's members were Jose Carrero, a citizen of Florida, David Day, a citizen of Nevada, Jake Holmes, a citizen of Colorado and Frank Bergren, a citizen of Illinois.[2]

13. Upon information and belief, BGD is an affiliate of MPR and, at all relevant times, operated under the trade name Metal Partners International.

14. At all times relevant, BGD was the owner or lessee of a steel rebar fabrication plant in North Las Vegas, Nevada, which was equipped to fabricate rebar raw material into saleable rebar products.

15. Defendant Intermetal Rebar, L.L.C. ("Intermetal") is a Florida limited liability company with an address at 10800 Biscayne Blvd, Ste. 870, Miami, Florida 33161-7402, and is a citizen of Florida.

16. Upon information and belief, Intermetal's members, Jose Carrero and Margoth Ramirez, are Florida citizens.

17. Intermetal is in the business of supplying rebar and other steel products.

18. Defendant Jose (Joe) Carrero ("Carrero") is an individual with an address at 6000 Island Blvd., Aventura, Florida 33160, who, upon information and belief, owns, directly or indirectly, a majority of the interests in the company and with full operational control over Intermetal.

19. On information and belief, Intermetal and/or Carrero and/or or another company owned and/or controlled by Intermetal and/or Carrero, is the majority owner of and has full operational control over MPR and BGD.[3]

---

[2] Upon information and belief, BGD's current members are Jose Carrero, a citizen of Florida, David Day, a citizen of Nevada, and Jake Holmes, a citizen of Colorado.

[3] Substantially all of the assets of MPR and BGD were purchased during their jointly administered Chapter 11 bankruptcy proceedings before this Court by JRC Opco LLC, a stalking horse bidder owned and controlled by Jose Carrero.

20. Defendant JPMorgan Chase Bank N.A. ("Chase") is a national bank association with its main office at 1111 Polaris Parkway, Columbus, Ohio 43240, and it a citizen of Ohio.

21. Defendant ADR Rebar, LLC ("ADR") is a Nebraska limited liability company having an address at 3102 Cherry Palm Drive, Suite 140, Tampa, Florida 33619.

22. Upon information and belief, at all relevant times, Defendant ADR was an entity affiliated with Defendant MPR and its members were Frank Bergren, an Illinois citizen and Jose Carrero, a citizen of Florida.[4]

## FACTS COMMON TO ALL COUNTS

### The Joint Venture Agreement

23. Pursuant to a Joint Venture Agreement ("JVA") dated March 1, 2018, Defendants MPR and BGD (collectively "Metal Partners"), together with Traxys, entered into a business arrangement under which:

   a. Traxys would purchase rebar raw material from suppliers and have it delivered to BGD's North Las Vegas plant or a third party warehouse;

   b. Metal Partners would fabricate the rebar raw material into rebar products;

   c. Metal Partners would arrange sales of the products to their customer network;

   d. Traxys would sell the products directly to those customers;

   e. The joint venture would operate under the trade name "Metal Partners International";

   f. All invoices for rebar and product sold were to be issued in Traxys' name, d/b/a "MPI"; and

   g. All financial transactions, including customer payments, were to be effected through the bank accounts of Traxys.

24. MPR, BGD, and Traxys conducted business under the JVA from approximately March 2018 until January 2020.

---

[4] Upon information and belief, ADR's current sole member/manager is Jose Carrero, a citizen of Florida.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

25.     Under the JVA, the net profits from the product sales, after accounting for all costs of purchasing the rebar raw material, including Traxys' financing charges, the costs of fabrication by Metal Partners, and other incidental costs and expenses, were to be shared 50-50 between Traxys and MPR.

26.     The JVA also provided that any losses incurred in the joint venture operation would be shared equally between Traxys and MPR.

27.     The JVA provided that, at all times until the sale of the product to the customer, the legal title and ownership of the rebar raw material, as well as all work-in-process during the fabrication phase, all fabricated products held for sale, all subsequent receivables, and all proceeds of such sales, would at all times remain with and be the property of Traxys.

28.     The JVA is governed by New York law.

29.     Traxys as secured party duly filed UCC-1 Financing Statements with the Secretary of State of Illinois and the Secretary of State of Nevada against both MPR and BGD as debtors to provide notice of Traxys' ownership of the inventory and to perfect Traxys' security interest in the inventory while situated on the premises of or under the control of MPR and/or BGD, as well as the accounts, documents, instruments, inventory and general intangibles (as such terms are defined in the UCC) and all replacements, substitutions and exchanges therefor and thereof and accessions thereto.

30.     The JVA sets out the legal structure of the joint venture:

-       The Joint Venture shall not be a separate legal entity or person, and shall exist solely as a matter of contract among the Parties;

-       *No Party shall* have the right or authority to bind the Joint Venture or any other Party to any transaction or agreement, or to *enter into any transaction with a third party for the benefit or risk of the Joint Venture without the express written consent of the other Parties*, except as expressly set forth herein;

-       *All purchase contracts, sale contracts, bills and invoices for rebar and products purchased or sold on behalf of the Joint Venture will be in the name of Traxys (d/b/a MPI) as the contracting party and title to all such rebar and products inventory will be held in the name of Traxys*;

-       Traxys will hold and remit for the benefit of the Joint Venture all profits of the Business generated by Traxys acting in the foregoing capacity on behalf of the Joint Venture;

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

-    *Neither MPR nor [BDG] shall have any property interests in Traxys but shall solely have a contractual right to share in the profits and (losses) of the Business as described herein*;

-    *Title to all inventory and finished product shall be held in the name of Traxys, and all contracts and agreements for the insurance and sale of such Product, shall be entered into and held in the name of Traxys, and shall be the sole property of Traxys.  All invoices for sales of product shall likewise be in the name of Traxys*;

-    The Joint Venture shall not maintain any separate bank accounts for the Joint Venture's business.  Except as otherwise specifically provided herein, *all financial transactions for and on behalf of the Joint Venture (including all receipts of and payments to and by the Joint Venture) shall be effected through the bank accounts of Traxys*.  The officers and agents of Traxys shall have sole signatory authority over such accounts.

31.    Under the JVA, neither MPR nor BGD ever had ownership of or title over any of the inventory or accounts receivables pertaining thereto, or any proceeds thereof.

32.    The JVA required that all customer purchase contracts and all invoices to customers were to be issued in the name of Traxys.

33.    Under the JVA, neither MPR nor BGD ever had the right to issue customer purchase contracts or invoices in their own name and never had ownership of or title to any customer funds received, or accounts or receivables relating to the sale of products or other inventory.

34.    MPR's sole right under the JVA was to receive from Traxys its 50% share of the net profits of the joint venture operation, if any, after reconciliation on an annual basis.

35.    The JVA further required that MPR and BGD provide Traxys with weekly summary reports of trading activities and positions and such other financial and business information as Traxys may request concerning the joint venture operations.

36.    During the joint venture operations, MPR and BGD provided Traxys information concerning the joint venture's activities and operations via their "Soule" ERP software system.

37.    Operations under the JVA commenced in March 2018 and operated without material incident through approximately October 2019.

38.    During these operations, MPR and BGD managed the day-to-day purchases of rebar raw material, fabrication, customer sales, fulfillment of customer orders, and invoicing customers.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

39.     Traxys monitored these operations via its on-line access to MPR's Soule ERP software system, into which all these activities were entered, as a result of which Traxys was able to track all inventory, orders, production, and sales and to book all joint venture transactions in its own electronic trading system.  In this manner, Traxys personnel could oversee and account for joint venture activities.

**Traxys Financing of BGD Equipment**

40.     In connection with the JVA, Traxys extended a term loan of $522,256 to BGD (the "BGD Loan") to finance the purchase of equipment, including a Shearline #11 Mechanical Table Bender and a Shearline 613c Auto Stirrup Bender (the "BGD Equipment"), located at BGD's North Las Vegas plant.

41.     The BGD Loan was to be repaid by BGD in monthly installments over 36 months together with interest at 6% per annum.  At various times during 2018, 2019, and 2020, BGD failed to make payments due and owing under the BGD Loan.  The outstanding balance of the BGD loan, including accrued interest, was $425,545 as of February 29, 2020.

42.     The BGD Loan was secured by a pledge of the BGD Equipment which security interest was perfected by a UCC-1 financing statement duly filed with the Nevada Secretary of State, naming Traxys as secured party and BGD as debtor.

43.     On or about December 2, 2020, this Court entered an order approving the sale of the BGD Equipment to JRC OpCo LLC n/k/a/ InteRebar Fabricators, LLC for a purchase price of $300,000 payable to Traxys as the lienholder, which was paid in March 2021.

44.     Notwithstanding the sale of the BGD Equipment, a deficiency in excess of $125,545.00 remains due and owing under the BGD Loan.

**Traxys-Owned Inventory Held by Metal Partners**

45.     As of December 31, 2019, Traxys owned 4,585 metric tons of rebar (raw material, work in process, and finished goods inventory) held at Metal Partners' North Las Vegas location or transloading facilities having a cost of $3,667,792 ("Las Vegas 12/31 Inventory").

46.     In addition to financing the purchase of rebar raw material to be processed  Metal Partners' North Las Vegas plant for sale to customers, Metal Partners and Traxys expanded their

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

business dealings to include Traxys providing financing for MPR's purchase of rebar raw material for its general trading and distribution operations, pursuant to which Traxys would purchase and deliver rebar raw material to MPR's New Castle, Delaware warehouse and various third party warehouses, to be held for sale to MPR or BGD or directly to MPR's customers ("Wholesale Inventory"). The profits (or losses) of this activity were to be included as part of the joint venture's profits (or losses).

47. As of December 31, 2019, Traxys had purchased and held 11,651 metric tons of rebar raw material at MPR's New Castle, Delaware warehouse and various third-party warehouses, having a cost of $9,363,108 ("Wholesale 12/31 Inventory" and, collectively with Las Vegas 12/31 Inventory, the "12/31 Inventory").

48. On information and belief, as of February 29, 2020, an additional 1,014 metric tons of rebar raw material had been delivered to the North Las Vegas plant that was invoiced by suppliers to Traxys for a total value of $755,606.64, and additional rebar raw material had been delivered and invoiced to Traxys subsequent to that date (collectively, "Delivered Post-12/31 Inventory") and, as of February 29, 2020, an additional 881 metric tons of rebar raw material was on-order (undelivered) for the North Las Vegas plant that was to be invoiced to Traxys for a total of approximately $641,055.03, and additional rebar raw material has been ordered (but not yet delivered) subsequent to that date ("On-Order Inventory" and, collectively with Delivered Post-12/31 Inventory, "Post-12/31 Inventory"). The 12/31 Inventory referred to above and the Post-12/31 Inventory are collectively referred to as the "Traxys-Owned Inventory").

**TRAXYS OWNED INVENTORY**

| 12/31/2019 | *4,585 MT* | $3,667,792.00 | (on ground N. Las Vegas) |
|---|---|---|---|
| 12/31/2019 | *11,651 MT* | $9,363,108.00 | (on ground New Castle) |
| 2/29/2020 | *1,014 MT* | $755,606.64 | (on ground N. Las Vegas) |
| 2/29/2020 | *881 MT* | $641,055.03 | (on order/undelivered) |
| TOTAL | *18,131 MT* | $14,427,561.67 | |

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**The Chase Loan**

49.     Upon information and belief, in or around August 2018, Chase extended a secured revolving loan (the "Chase Loan") to MPR and certain of its affiliates pursuant to which Chase provided financing for certain MPR business operations unrelated to the JVA and received a security interest in the assets of MPR and certain of its affiliates.

50.     BGD was not a borrower or a guarantor under the Chase Loan, and Chase did not receive any security interest in any asset of BGD in connection with the Chase Loan.

51.     Upon information and belief, at the time the Chase Loan was made, Chase had actual knowledge of the JVA and of Traxys' ownership of all Traxys-Owned Inventory and Traxys' entitlement to payment for all sales of Traxys-Owned Inventory under the JVA.

52.     The Chase Loan was not related to MPR or BGD's business operations under the JVA, and Chase did not receive any security interest in any inventory, receivable, or other asset owned or financed by Traxys in connection with the JVA.

53.     During the normal course of performance under the JVA, the inventory purchased by Traxys for the joint venture was sold to customers under sales contracts and invoices issued in Traxys' name, with instructions for customers to pay the invoiced amounts directly to Traxys' bank account at Deutsche Bank in New York.  However, on information and belief, some joint venture customers incorrectly paid invoice amounts directly to a dedicated bank account of MPR at Chase.

54.     On information and belief, prior to August 2019, all or substantially all joint venture customer payments incorrectly deposited to MPR's bank account at Chase were paid over by MPR to Traxys as required under the JVA.

55.     On information and belief, in or around August 2019, Chase conducted a field audit of MPR's business operations in connection with the Chase Loan and learned that certain payments due to Traxys from joint venture customers were being incorrectly deposited in MPR's dedicated bank account at Chase when such payments belonged to and should have been sent directly to Traxys.

56.     On information and belief, Chase was aware that receivables owned by Traxys for the sale of inventory owned by Traxys in connection with the joint venture continued to be deposited

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1  into MPR's dedicated bank account at Chase from as early as August 2019 through at least April

2  2020.

3      57.    On information and belief, as a result of issues that arose in connection with the field

4  audit conducted in or around August 2019, Chase significantly restricted new advances to MPR

5  under the Chase Loan.  As a result, MPR began to face financial difficulties and was prevented by

6  Chase from paying over to Traxys new joint venture customer payments improperly deposited in

7  MPR's bank account at Chase.

8  **Assignment of ADR Receivables**

9      58.    MPR also failed to pay Traxys for certain of the Warehouse Inventory sold by Traxys

10  directly to MPR and failed to pay Traxys its share of the joint venture's losses as required under the

11  JVA.

12      59.    In response to these defaults and to induce Traxys to continue doing business with

13  MPR, Frank Bergren, the managing member of MPR, arranged for ADR, which was an affiliate of

14  and shared common ownership with MPR, to execute and deliver an Assignment of Accounts

15  Receivable dated November 5, 2019 (the "ADR Assignment") to Traxys by which ADR assigned to

16  Traxys certain accounts receivable of ADR up to the amount of $4,830,748.18 (the "ADR

17  Receivables") as security for the obligations of MPR under the JVA.

18      60.    In reliance on the ADR Assignment, Traxys continued doing business with and

19  purchasing and paying for materials delivered to MPR and BGD.

20      61.    ADR was obligated under the ADR Assignment to notify its customers to remit to

21  Traxys all sums due on the ADR Receivables and, further, to remit to Traxys any sums ADR received

22  on account of such receivables.

23      62.    Traxys, as secured party, duly filed a UCC-1 Financing Statement with the Nebraska

24  Secretary of State to perfect Traxys' ownership of and interest in the ADR Receivables.

25      63.    Traxys has not received any payments on the ADR Receivables.

26  **Unauthorized Sales of Traxys-Owned Inventory by Metal Partners**

27      64.    On information and belief, beginning in January 2020, MPR and BGD sold certain

28  of the Traxys-Owned Inventory to customers under purchase contracts and/or invoices issued in the

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

name of MPR, BGD, or an affiliate, instead of Traxys, with instructions for customers to pay the invoiced amounts directly to a dedicated bank account of MPR at Chase, instead of Traxys' bank accounts, and a number of these customers paid the invoiced amounts directly to a dedicated bank account of MPR at Chase in the estimated sum of $5,247,339, inclusive of $4,352,801.44 identified by Chase as received into the MPR account(s) at Chase combined with $776,714 collected into a "blocked" account.

**Unauthorized Retention of Traxys' Customer Funds by Chase**

65.     On information and belief, at all material times MPR owed contractual trade finance obligations to Chase.

66.     On information and belief, MPR defaulted on its trade finance obligations to Chase.

67.     On information and belief, commencing in the third quarter of 2019, Chase prohibited MPR from paying over to Traxys the customer funds deposited into MPR's bank account at Chase, which payments were made by customers of the joint venture for the purchase of Traxys' inventory ("Customer Funds").

68.     Despite due demand from Traxys, MPR failed and refused to pay over to Traxys the Customer Funds.

69.     Despite due demand from Traxys, Chase has failed and refused to pay over to Traxys the Customer Funds.

70.     On information and belief, the Customer Funds belonging to Traxys that have been wrongfully deposited in dedicated bank accounts of Metal Partners or its affiliates at Chase prior to January 2020 amounted to approximately $7,619,155.

71.     As referenced in paragraph 64, above, additional Customer Funds in the approximate amount of $776,713.20 paid into Metal Partners dedicated bank accounts at Chase after April 13, 2020 have been deposited by Chase into a "blocked account," pursuant to an agreement between MPR, BGD, Chase and Traxys in settlement of an application for temporary restraining order by Traxys in this action.

72.     The aggregate customer funds deposited improperly into MPR's account(s) at Chase and/or deposited pursuant to agreement into the Chase blocked account amount to $13,643,208.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**The Joint Venture Settlement Agreement**

73.     On or about November 25, 2019, Carrero contacted Todd Frank, the commercial representative of Traxys in charge of the joint venture with MPR and BGD, to advise that he and/or Intermetal had been a silent investor in MPR for a number of years and that directly or indirectly through Intermetal or another affiliate Carrero had taken over the ownership and control of MPR, that Bergren had been forced out of MPR and BGD and that Carrero wished to negotiate a termination of the JVA and a settlement of all of Traxys' claims against MPR and BGD, including but not limited to the joint venture customer funds improperly paid into the MPR dedicated bank accounts at Chase.

74.     Following arm's length negotiations, on January 17, 2020, MPR, BGD, Intermetal, Carrero and Traxys executed a settlement agreement (the "Settlement Agreement").

75.     The Settlement Agreement provides, in material part, as follows:

      a.   Intermetal agreed to purchase from Traxys the 12/31 Inventory stored at all storage locations, including MPR's and BGD's plants or third-party warehouse locations, at agreed prices, payable on 90-day terms and to be released to Intermetal in two installments.  (On information and belief, the price to be paid for such inventory was $2,789,165 for Las Vegas 12/31 Inventory and $6,568,526 for Wholesale 12/31 Inventory);

      b.   Intermetal agreed to purchase all of the Post-12/31 Inventory, at Traxys' cost (as of February 29, 2020 the price for such inventory was $755,606.64 for Delivered Post-12/31 Inventory and approximately $641,055.03 for On-Order Inventory);

      c.   Carrero agreed to personally guarantee, without limitation, Intermetals' obligation to make payment of the purchase price for the 12/31 Inventory and the Post-12/31 Inventory by Intermetal;

      d.   MPR acknowledged it was in possession of payments received from customers that were rightfully due to and belonging to Traxys arising from sales of the Traxys' inventory (i.e., the Customer Funds);

e.  MPR agreed to issue a promissory note for all Customer Funds for all periods through January 17, 2020 (on information and belief, the amount of such Customer Funds received by MPR and not remitted to Traxys for all periods through January 17, 2020 is $7,619,155);

f.  MPR agreed to immediately turn over to Traxys all Customer Funds received after January 17, 2020, payable in equal monthly installments over 12 months (the amount of such Customer Funds for the period January 17, 2020 through November 30, 2020 was approximately $5,247,339);

g.  Carrero also personally guaranteed MPR's and/or BGD's obligation to make the payment of the promissory note, to repay the equipment loan, and to turn over to Traxys the Customer Funds, up to a maximum liability to him of $1.5 million for these MPR and/or BGD obligations;

h.  Receivables due to Traxys for sales of certain of the Wholesale Inventory to MPR and other activities, net of 90% of certain payables due by Traxys to MPR for tolling costs of fabricating rebar raw material at the North Las Vegas plant for the period through December 31, 2019, were agreed to be paid to Traxys pursuant to the terms of the MPR promissory note.  (This net sum has been determined to be $1,590,555);

i.  All receivables for Traxys' inventory sold to customers on or before December 31, 2019 (and payments received on such receivables) were agreed to be for the account of Traxys.  All receivables for Traxys' inventory that was to be purchased by Intermetal and sold to customers after December 31, 2019 (and payments received on such receivables) were agreed to be for the account of Intermetal;

j.  The balance of the equipment loan due and owing from BGD to Traxys plus accrued interest would be paid to Traxys within 60 days of execution of the Settlement Agreement;

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

     k.   Traxys agreed to terminate its UCC financing statements on Traxys' inventory upon the purchase of such inventory by Intermetal; and

     l.   The parties agreed to execute a mutual release of all claims (with exceptions for claims based on fraud, misappropriation or theft).

76.    The Settlement Agreement provides that its effectiveness is subject to, inter alia, the following condition precedent:

> All definitive legal documentation to evidence the terms of this Settlement, including but not limited to the purchase and sale agreement between IM and Traxys, the Promissory Note, the Guaranties, the amendment of the Equipment Loan, UCC termination statements, and the mutual releases, shall have been prepared and agreed to the satisfaction of each of the parties; and shall have been duly executed by each of the respective parties thereto, *provided that (i) each party agrees to act in good faith in the negotiation and preparation of such documentation and (ii) in the event the parties cannot agree on such documentation within 5 business days after the execution hereof, then at the option of either party this Settlement shall become the definitive settlement agreement*. (emphasis added)

77.    The Settlement Agreement provides that it shall become effective on the third business day after the conditions precedent are satisfied or waived in writing.

78.    The Settlement Agreement is governed by New York law.

79.    Following execution of the Settlement Agreement, Traxys prepared and delivered to Carrero, personally and in his capacity as authorized representative of MPR, BGD and Intermetal, drafts of definitive settlement documents, including:

     a.   a formal definitive Settlement Agreement;

     b.   a Sale Contract for the sale of the Traxys-Owned Inventory to Intermetal;

     c.   a Promissory Note of MPR with respect to the pre-January 17th Customer Funds and Net Receivable due to Traxys;

     d.   Carrero's Guaranty of Intermetal's purchase obligations;

     e.   Carrero's Limited Guaranty of MPR's and BGD's payment and other obligations; and

     f.   an Amendment of Promissory Note of BGD.

80.    On January 30, 2020, counsel for Intermetal and Carrero wrote to Traxys, for the first time: "Just dropping you an email introducing myself. I will be working with Joe Carrero and Joe

Tedesco [MPR's CFO] on this matter.  I am awaiting comments from management and will respond to your documents as soon as we can coordinate our comments."

81.    Thereafter, it became apparent that Intermetal, MPR, BGD, and Carrero had no intention of complying with the Settlement Agreement.  On February 3, 2020, Traxys asked counsel: "Just checking in to ask when you expect to send your comments."  Counsel for Intermetals and Carrero replied that same day: "I don't have a timetable but I will check with them.  I know this needs to be coordinated with a couple of other projects."  In a telephone call with Traxys' general counsel on February 10, 2020, counsel for Carrero and Intermetal and counsel for Metal Partners challenged the validity of the Settlement Agreement and made other assertions suggesting their clients may not perform their obligations.  They also stated that MPR and BGD were in an "insolvency situation", that MPR and BGD had retained bankruptcy counsel and a financial advisor and were in discussions with Chase regarding a financial restructuring, and also advised that certain customer funds belonging to Traxys were being held by Chase.

82.    After Traxys provided counsel with a copy of the JVA and other requested documents on February 11, 2020, counsel for Intermetal and Carrero wrote to Traxys: "As we discussed yesterday, we are working to develop solutions to the joint venture, which also need to be addressed with the bank.  Todd Frank continues to try to communicate with Joe Carrero frequently.  Kindly ask him to stop doing this.  It is counterproductive to our mutual goals."  Todd Frank had been seeking to communicate with Joe Carrero to accelerate the consummation of the settlement.

83.    Following this discussion, on February 11, 2020, Traxys wrote to counsel for Carrero, Intermetal MPR and BGD:

Gentlemen:

Thank you for your time on the phone yesterday.

I am looking forward to our next call, anticipated for Wednesday afternoon, where I expect you will discuss the next steps regarding the settlement transaction among Intermetals, Metal Partners, Joe Carrero, and Traxys, that was executed on Jan 17th.

In the meantime I'd like to address a few important matters:

1.  I am in receipt of Mark's email below. I am not aware, and do not agree, that we are on a litigation footing such that the parties here should only be communicating via counsel. Todd Frank and Joe Carrero have been in regular communication for

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

a number of months regarding commercial matters pertaining to Metal Partners, leading up to the settlement, and I expect they will need to stay in close contact regarding implementation.

2. As you may know Traxys has discovered a shortfall of approximately 2,400 bundles of rebar stock belonging to Traxys that were to be held at MPR's New Castle facility as of December 31, 2019, having an approximate sale value of $2.2 million.  Notice of this shortfall was provided to MPR and Intermetals orally following discovery on January 30th, and then in writing on February 5th (see attached).  Metal Partners has failed to provide any explanation as to the whereabouts of this missing stock, and Traxys reserves all of its rights against Metal Partners.

3. In connection with the missing stock, Traxys has filed a claim on its insurance. The insurance adjuster will require access to the New Castle facility, its records and personnel, in order to investigate the loss, and we expect to receive the full cooperation of both of your clients as may be requested.  This is one reason that Todd Frank will continue to need to communicate with both Joe Carrero and Frank Bergren.

4. Based on our call yesterday, we are presently unclear as to whether the settlement entered into on January 17th will be honored by your clients.  We reserve our rights to enforce the settlement in accordance with its terms.

5. Until the settlement is implemented, we reserve our rights under the joint venture arrangement, and in particular we expect Metal Partners to safeguard all inventory and funds belonging to Traxys, and not to take any action in respect of Traxys' property without the approval of Traxys.

6. As you have indicated your clients may not honor the settlement, we have no choice but to protect our interests in all events.  Moreover, the settlement contemplates that the transactions were to have become effective promptly, with all receivables and subsequent funds to be paid directly to Traxys, which clearly has not occurred, with the consequence that customer funds belonging to Traxys continue to be wrongfully diverted to bank accounts of Metal Partners.

7. We accordingly reserve the right to notify all customers who have been issued invoices in the name of Traxys to pay all funds directly to Traxys' designated bank accounts, and not the accounts of Metal Partners, and to advise those customers that any payments other than to Traxys' accounts will not discharge their invoices and will result in their being liable to pay the invoices a second time.

8. Finally, we hereby demand that all customer funds – i.e., all funds received by Metal Partners to date from customers pursuant to invoices issued in the name of Traxys for Traxys' inventory – be immediately turned over to Traxys.

9. We reserve all rights, whether in contract, tort, or otherwise.

To be clear, we hope that these matters can be amicably and consensually settled and will work with you toward that end.

84. Traxys received no response to this email.

85.     Traxys continued its efforts thereafter to consummate the settlement transaction, including on February 14, 2020 providing to Intermetal, Carrero, MPR, and BGD's respective counsel Traxys' calculations of the sums due under the Settlement Agreement for the inventory purchase, customer funds, and net receivables along with supporting documentation, and thereafter providing certain additional information requested by counsel for Carrero and Intermetal.

86.     Neither Carrero, MPR, BGD nor Intermetal has ever responded to the draft settlement documents or signed and returned the settlement documents to Traxys.

87.     Carrero, MPR, BGD and Intermetal have failed and refused to perform their obligations under the Settlement Agreement, including, among others, their obligation to act in good faith in the negotiation and preparation of the definitive settlement documentation.

88.     Instead, Carrero, MPR, BGD and Intermetal, directly or via counsel, repeatedly sought to attack the validity of the Settlement Agreement and at the same time sought to negotiate an amendment of its terms.  Traxys, without prejudice, engaged in discussions with Carrero, MPR, BGD and Intermetal concerning their proposed amendments to the Settlement Agreement, but no agreement has been reached.

**Events Subsequent to the Joint Venture Settlement Agreement**

89.     On information and belief, subsequent to the Settlement Agreement dated January 17, 2020, MPR and BGD continued to direct or permit Customer Funds to be paid directly to MPR's bank account at Chase.

90.     On information and belief, since January 17, 2020, in excess of $3,200,000 of Customer Funds belonging to Traxys were deposited in MPR's bank account[5] at Chase.

91.     Despite due demand, MPR failed and refused to pay over to Traxys the Customer Funds paid by third party customers for the purchase of the Traxys-Owned Inventory which were deposited into MPR's bank account at Chase.

92.     Despite due demand, Chase failed and refused to turn over to Traxys the Customer Funds received in MPR's bank account at Chase that were paid for the purchase of the Traxys-

---

[5] This account, referred to as a "lockbox" account, is separate and apart from the "blocked account" established at Chase in relation to Traxys' TRO application in this action.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Owned Inventory.

93.     On information and belief, after February 2020, MPR and BGD continued to sell Traxys-Owned Inventory to customers under purchase contracts and/or invoices issued in the name of MPR, BGD, or an affiliate, with instructions for the customers to pay the invoiced amounts directly to MPR's bank account at Chase.

94.     On January 30, 2020, a physical count of the inventory at MPR's New Castle, Delaware fabrication facility was conducted by Traxys and attended by representatives of Chase, MPR, and Intermetal.  The physical count disclosed that approximately 2,133 bundles, equivalent to 3,099 metric tons of rebar raw material, having an approximate value of $2,519,682, that was expected to be stored at MPR's New Castle, was not present.  Despite due demand, Metal Partners failed to identify the location or whereabouts of the missing rebar raw material.

95.     As a result of this missing rebar raw material inventory, Traxys filed a police report as well as a claim for the loss with its insurance carrier.  Despite due demand, MPR has refused to provide physical access to its facility or the relevant books and records to the insurer's investigator, or otherwise to cooperate with the investigation of Traxys' claim.

96.     On or about February 6, 2020, MPR and BGD discontinued Traxys' access to the Soule ERP system and subsequently failed to provide Traxys access to books and records or other information concerning the business activities conducted under the JVA.

97.     On February 13, 2020, Traxys emailed counsel for MPR, BGD, Intermetal and Carrero requesting that Traxys' access to the Soule ERP software system be restored.

98.     MPR, BGD, Intermetal and Carrero failed to restore Traxys' full access to the Soule ERP software system.

99.     As a consequence of MPR and BGD's denial of access to the Soule system, Traxys was deprived of information concerning the joint venture operations, including but not limited to the sale of Traxys-Owned Inventory, the invoicing of such sales, and receipt of customer payments for the sales of its property.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

100.    As a further consequence of MPR and BGD's denial of access to the Soule ERP software system, Traxys has been unable to timely file certain sales tax and income tax returns thus subjecting Traxys to interest and penalties.

101.    On February 17, 2020, counsel for Traxys sent a letter to counsel for MPR, BGD, Intermetal and Carrero demanding:

      a.    that Traxys' access to the Soule ERP software system be immediately restored;

      b.    that all Customer Funds paid be immediately turned over to Traxys; and

      c.    that they cooperate in the investigation being conducted by Traxys' insurer concerning the Traxys inventory that is missing from MPR's New Castle, Delaware plant.

102.    Other than a term sheet proposing an amended settlement on terms wholly unacceptable to Traxys, neither Traxys nor its counsel received any response to the demands set out in this notice.

103.    On February 25, 2020, Traxys' counsel wrote again to counsel for MPR, BGD, Intermetal and Carrero demanding that MPR, BGD, Intermetal and Carrero:

      a.    immediately cease and desist from selling any Traxys-Owned Inventory without the approval of Traxys;

      b.    that they immediately instruct any purchaser of the Traxys-Owned Inventory to remit all payments to Traxys' bank account; and

      c.    that by not later than February 28, 2020, they remit to Traxys all funds collected into the bank accounts of Metal Partners or its affiliates at Chase on account of sales of the Traxys-Owned Inventory to Traxys' bank account, details of which accompanied the letter.

104.    Neither Traxys nor its counsel received a response to the letter.

**Traxys' Responses to Metal Partners', Intermetals' and Carrero's Defaults**

105.    By letter dated February 28, 2020, Traxys notified Carrero, MPR, BGD and Intermetal of its election, in accordance with the terms of the Settlement Agreement, to waive all of

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

the conditions precedent and to declare that the January 17, 2020 Settlement Agreement would operate as the definitive settlement agreement.

106.    Traxys received no response to the February 28, 2020 letter.

107.    By letter dated February 28, 2020, Traxys notified BGD of its default under the BGD Loan Agreement.

108.    Traxys received no response to its February 28, 2020 notice letter to BGD.

109.    By letter dated February 28, 2020, Traxys notified Chase of Traxys' rights to the customer funds deposited into MPR's or BGD's bank accounts at Chase and demanded that Chase turn over such funds to Traxys.

110.    Traxys received no response to the February 28, 2020 demand letter to Chase.

111.    On March 11, 2020, Traxys sent a letter to MPR and BGD demanding the return of the Traxys-Owned Inventory, or that the Traxys-Owned Inventory be made available for Traxys to retrieve, as well as an accounting of all inventory received or sold since December 31, 2019 and that MPR and BGD cease and desist from any further sale or disposition of the Traxys-Owned Inventory.

112.    Traxys received no response to the March 11, 2020 letter.[6]

### FIRST CAUSE OF ACTION

### (Breach of Contract as against MPR, BGD Intermetal and Carrero)

113.    Paragraphs 1-112 are incorporated in this First Cause of Action as if set forth fully herein.

114.    Plaintiff and MPR, BGD, Intermetal and Carrero, for valuable consideration, entered into a valid and enforceable Settlement Agreement dated January 17, 2020.

115.    The failure and refusal by Intermetal to purchase the 12/31 Inventory and the Post-12/31 Inventory under the Settlement Agreement constitutes a breach of contract.

116.    The failure and refusal by MPR to cause the turnover of Customer Funds due to Traxys under the Settlement Agreement constitutes a breach of contract.

---

[6] Subsequently, Debtors in the action before this Court under docket number BK−20−12878−abl, including MPR and BGD, filed petitions pursuant to Chapter 11 of the U.S. Bankruptcy Code.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

117.    The failure and refusal by MPR to pay the net receivable due to Traxys under the Settlement Agreement constitutes a breach of contract.

118.    The failure and refusal by Carrero to pay, or to cause Intermetal to pay, for the 12/31 Inventory and the Post-12/31 Inventory under the Settlement Agreement constitutes a breach of contract.

119.    The failure and refusal by MPR to pay the Customer Funds and net receivable due to Traxys under the Settlement Agreement constitutes a breach of contract.

120.    The failure and refusal by Carrero to pay, or to cause MPR to pay, the Customer Funds and net receivable due to Traxys under the Settlement Agreement constitutes a breach of contract.

121.    The failure and refusal by MPR, BGD and Carrero to pay the equipment loan balance to Traxys under the Settlement Agreement constitutes a breach of contract.

122.    The failure and refusal by MPR, BGD, Intermetal to perform their obligations under the Settlement Agreement constitutes a breach of contract.

123.    By reason of the foregoing, Traxys has been damaged in an amount exceeding $75,000 and which is presently estimated at not less than $29,661,323[7] plus interest thereon at the New York statutory rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51.

## SECOND CAUSE OF ACTION

### (Breach of Contract as against MPR and BGD)

124.    Paragraphs 1-112 are incorporated in this Second Cause of Action as if set forth fully herein.

125.    This Second Cause of Action is asserted in the alternative to the First Cause of Action.

126.    MPR and BGD's sale of the Traxys-Owned Inventory under their own names is a violation of the express terms of the JVA and constitutes a breach of the JVA.

---

[7] Inclusive of inventory and customer funds.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

127. MPR and BGD's failure to turn over the proceeds of the sale of Traxys-Owned Inventory including but not limited to Customer Funds, to Traxys is a violation of the express terms of the JVA and constitutes a further breach of contract.

128. MPR and BGD's failure to maintain safely and account for the missing 3,098.89 metric tons of rebar raw material expected to be stored at MPR's New Castle plant and to cooperate with the investigation of such loss is a violation of the JVA and is a further breach of contract.

129. MPR and BGD's failure to provide Traxys with financial and accounting data concerning the joint venture operations is a violation of the JVA and is a further breach of contract.

130. MPR and BGD's failure to account for the profits or losses on the sale (without Traxys' consent) of the Traxys-Owned Inventory and to pay over Traxys' share of the profits to Traxys or to reimburse Traxys for MPR's or BGD's share of the losses incurred by Traxys is a violation of the JVA and is a further breach of contract.

131. By reason of the foregoing, Traxys has been damaged in an amount exceeding $75,000 and which is presently estimated at not less than $10,754,353 plus interest thereon at the New York statutory rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51.

## THIRD CAUSE OF ACTION

### (Breach of Contract as Against ADR)

132. Paragraphs 1-63 are incorporated in this Third Cause of Action as if set forth fully herein.

133. This Third Cause of Action is asserted in the alternative to the First Cause of Action.

134. Plaintiff and ADR, for valuable consideration, entered into a valid and binding contract referred to herein as the ADR Assignment.

135. In breach of its obligations under the ADR Assignment, Defendant ADR failed to require and ensure that its customers paid the ADR Receivables to Traxys.

136. Upon information and belief, payments by ADR's customers on account of the ADR Receivables have been received by ADR into its or MPR's bank accounts at Defendant Chase.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

137.     As a consequence of Defendant ADR's breach of its obligations under the ADR Assignment, Traxys has suffered damages exceeding $75,000 and which is presently estimated in the sum of not less than $4,830,748.18, plus statutory interest thereon at the rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51.

### FOURTH CAUSE OF ACTION

### (Breach of Contract as against BGD)

138.     Paragraphs 1-112 are incorporated in this Fourth Cause of Action as if set forth fully herein.

139.     This Fourth Cause of Action is asserted in the alternative to the First Cause of Action.

140.     Plaintiff and BGD, for valuable consideration, entered into a valid and binding contract in the form of a term loan referred to herein as the BGD Loan Agreement.

141.     Under an agreement between Traxys and JRC OpCo LLC n/k/a InteRebar Fabricators, LLC, Traxys was paid $300,000 for the purchase of equipment at the BGD North Las Vegas plant.

142.     A deficiency of $125,545, plus interest, remains due and owing to Traxys under the BGD Loan Agreement.

143.     BGD's failure to pay the monthly installments, plus interest, on the BGD Loan Agreement constitutes a breach of contract.

144.     By reason of the foregoing, Traxys has been damaged in the amount of $125,545, inclusive of accrued interest through February 29, 2020, plus interest thereon at the New York statutory rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51.

### FIFTH CAUSE OF ACTION

### (Conversion as against MPR, BGD, Intermetal and Carrero)

145.     Paragraphs 1-112 are incorporated in this Fifth Cause of Action as if set forth fully herein.

146.     This Fifth Cause of Action is asserted in the alternative to the First and Second Causes of Action.

147.     Traxys is the legal owner of the Traxys-Owned Inventory.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

148.    In direct contravention of Traxys' superior rights and title to the Traxys-Owned Inventory, Defendants MPR, BGD, Intermetal and Carrero have willfully and without lawful justification exercised an unauthorized dominion over the Traxys-Owned Inventory, without Traxys' consent, and to the exclusion of Traxys' superior rights and title by selling the Traxys-Owned Inventory to customers and invoicing for such inventory directly in the name of MPR, BGD, or an affiliate and/or retaining the proceeds thereof including but not limited to Customer Funds paid for the purchase of Traxys-Owned Inventory MPR's bank account at Chase.

149.    By reason of the foregoing, Traxys has been damaged in an amount to be determined at trial, but in no event less than $75,000 plus statutory interest thereon at the rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51.

## SIXTH CAUSE OF ACTION

### (Conversion as against MPR, BGD, Intermetal, Carrero and Chase)

150.    Paragraphs 1-112 are incorporated in this Sixth Cause of Action as if set forth fully herein.

151.    This Sixth Cause of Action is asserted in the alternative to the First and Second Causes of Action.

152.    Traxys is the legal owner of the proceeds of the sale of Traxys-Owned Inventory including but not limited to Customer Funds.

153.    In direct contravention of Traxys' superior rights and title to the proceeds of the sale of the Traxys-Owned Inventory, Defendants MPR, BGD, Intermetal, Carrero and Chase have willfully and without right, permission or lawful justification exercised an unauthorized dominion over Traxys' property, to the exclusion of Traxys' rights, by failing to turn over the proceeds of the Traxys-Owned Inventory, including but not limited to the Customer Funds, to Traxys.

154.    By reason of the foregoing, Traxys has been damaged in an amount to be determined at trail, but in no event less than $75,000 and which is presently estimated at not less than $9,691,844 plus statutory interest thereon at the rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SEVENTH CAUSE OF ACTION

### (Conversion and Breach of Bailment as against MPR)

155.    Paragraphs 1-112 are incorporated in this Seventh Cause of Action as if set forth fully herein.

156.    This Seventh Cause of Action is asserted in the alternative to the First and Second Causes of Action.

157.    In connection with the joint venture, Traxys delivered to MPR at its New Castle, Delaware fabrication facility rebar raw material to be held for sale to MPR and/or customers of the joint venture.

158.    Traxys is the legal owner of the rebar raw material.

159.    Traxys, as bailor, delivered the rebar raw material to MPR, as bailee, and thereby created a bailment.

160.    MPR held and maintained custody of such rebar raw material at its premises as bailee and/or consignee of Traxys.

161.    On January 30, 2020, a physical count of the rebar raw material at MPR's New Castle facility disclosed that 2,133 bundles, equivalent to 3,098.89 metric tons of rebar raw material, was not present, having a cost of $2,519,682.

162.    In violation of its obligations as bailee and/or consignee of Traxys, Defendant MPR failed to properly and adequately care for, supervise, and preserve the rebar raw material, and has also failed to account for the missing rebar raw material delivered by Traxys to MPR.

163.    Alternatively, in direct contravention of Traxys' superior rights and title to the rebar raw material, Defendant MPR has exercised an unauthorized dominion over the rebar raw material without right, permission or lawful justification and to the exclusion of Traxys' rights by removing and/or misappropriating the rebar raw material resulting in the 2,133 missing bundles.

164.    As a consequence of MPR's breach of bailment, or alternatively its conversion of the rebar raw material, Traxys has suffered damages in an amount to be determined at trial, but in no event less than $75,000 and which is presently estimated in the sum of not less than $2,519,682 plus

statutory interest thereon at the rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51.

## EIGHTH CAUSE OF ACTION

### (Unjust Enrichment as to MPR, BGD, Intermetal and Carrero)

165.    Paragraphs 1-112 are incorporated in this Eighth Cause of Action as if set forth fully herein.

166.    This Eighth Cause of Action is asserted in the alternative to the First, Second, Fifth, Sixth and Seventh Causes of Action.

167.    Each of by MPR, BGD, Intermetal and Carrero would be unjustly enriched if permitted to retain the Traxys-Owned Inventory, accounts receivables relating thereto, or proceeds thereof including but not limited to the Customer Funds or any of the benefits accruing therefrom.

168.    The retention or use for its benefit of the Traxys-Owned Inventory, accounts receivables relating thereto, or proceeds thereof including but not limited to the Customer Funds by MPR, BGD, Intermetal and Carrero is at Plaintiff Traxys' expense.

169.    It is against equity and good conscience to permit MPR, BGD, Intermetal and Carrero to retain or use for their benefit the Traxys-Owned Inventory, accounts receivables relating thereto, or proceeds thereof including but not limited to the Customer Funds.

170.    By reason of the foregoing, Traxys has been damaged in an amount presently estimated in the sum of not less than $20,000,000, plus interest thereon at the New York statutory rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51.

## NINTH CAUSE OF ACTION

### (Unjust Enrichment as to Chase)

171.    Paragraphs 1-112, are incorporated in this Ninth Cause of Action as if set forth fully herein.

172.    This Ninth Cause of Action is asserted in the alternative to the First, Second, Fifth, Sixth and Seventh Causes of Action.

173.    Chase would be unjustly enriched if permitted to retain the Customer Funds or any of the benefits accruing therefrom.

174.    The retention of the Customer Funds by Chase is at Plaintiff Traxys' expense.

175.    It is against equity and good conscience to permit Chase to retain the Customer Funds.

176.    By reason of the foregoing, Traxys has been damaged in an amount presently estimated in the sum of $9,691,844, plus interest thereon at the New York statutory rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51.

### TENTH NINTH CAUSE OF ACTION

### (Constructive Trust)

177.    Paragraphs 1-175 are incorporated in this Tenth Cause of Action as if set forth fully herein.

178.    This Tenth Cause of Action is asserted in the alternative to the First and Second Causes of Action.

179.    Defendants MPR, BGD, Intermetal and Carrero each owed a fiduciary obligation to Plaintiff Traxys concerning Traxys' property consisting of the Traxys-Owned Inventory, accounts receivables relating thereto, and proceeds thereof including but not limited to the Customer Funds.

180.    Defendant Chase owed a fiduciary obligation to Plaintiff Traxys concerning the Customer Funds deposited into accounts at Chase for the dedicated purpose of receiving payments on the sale of the Traxys-Owned Inventory.

181.    Through no fault of its own Plaintiff Traxys has been wrongfully deprived of its property in the form of the Traxys-Owned Inventory, accounts receivables relating thereto, and proceeds thereof including but not limited to the Customer Funds.

182.    By reason of their retention of Plaintiff Traxys' property consisting of the Traxys-Owned Inventory, accounts receivables relating thereto, and the proceeds thereof including but not limited to Customer Funds to which the Defendants MPR, BGD, Intermetal, Carrero and Chase have no legal or equitable right, claim or interest therein, each of MPR, BGD, Intermetal, Carrero and/or Chase have been unjustly enriched.

183.    The Traxys-Owned Inventory, accounts receivables relating thereto, and proceeds thereof including but not limited to the Customer Funds must be held by each of MPR, BGD,

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1  Intermetal, Carrero and Chase as involuntary trustees holding said property and profits therefrom in

2  constructive trust for Plaintiff Traxys with the duty to immediately convey the same to Plaintiff

3  Traxys.

4  **ELEVENTH CAUSE OF ACTION**

5  **(Accounting as to MPR and BGD)**

6       184.    Paragraphs 1-182 are incorporated in this Eleventh Cause of Action as if set forth

7  fully herein.

8       185.    Defendants MPR and BGD breached their fiduciary duties in connection with their

9  duties for financial responsibility to Traxys under the JVA.

10       186.    Defendants MPR, BGD, Intermetal and Carrero were entrusted with money,

11  budgeting and accounting for the joint venture and are subject to the burden of accounting in

12  connection with the JVA's business, operations, revenues, profits and expenses.

13       187.    Plaintiff Traxys is entitled to an accounting from Defendants MPR, BGD, Intermetal

14  and Carrero concerning the Traxys-Owned Inventory, the Customer Funds and the joint venture

15  business, operations, revenues, profits and expenses.

16       188.    Plaintiff Traxys has no adequate remedy at law.

17

18       **WHEREFORE**, Plaintiff Traxys respectfully requests this Court enter judgment as follows:

19       A.    On the First Cause of Action damages in the principal sum of $29,661,323;

20       B.    On the Second Cause of Action damages in the principal sum of not less than

21  $10,754,353;

22       C.    On the Third Cause of Action damages in the principal sum of not less than

23  $4,830,748.18;

24       D.    On the Fourth Cause of Action damages in the principal sum of $125,545;

25       E.    On the Fifth Cause of Action damages in the principal sum of not less than $75,000;

26       F.    On the Sixth Cause of Action damages in the principal sum of not less than

27  $9,691,844;

28

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

G.    On the Seventh Cause of Action damages in the principal sum of not less than $2,519,682;

h.    On the Eighth Cause of Action damages in the principal sum of not less than $20,000,000;

I.    On the Ninth Cause of Action damages in the principal sum of not less than $9,691,844;

J.    On the Tenth Cause of Action a constructive trust be imposed on all of the Traxys-Owned Inventory, accounts receivables relating thereto, and the proceeds thereof including but not limited to the Customer Funds;

K.    On the Eleventh Cause of Action an accounting;

L.    Pre-judgment interest and post-judgment interest on the Fourth cause of action at the rate of 6% per annum

M.    Pre-judgment interest and post-judgment interest on the First through Third and Fifth through Eighth causes of action at the rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51;

N.    Reasonable attorney's fees, costs, and disbursements; and

O.    Such other relief the Court finds just and proper under the facts and circumstances.

Dated this 10th day of August 2021.

**SHEA LARSEN**

By: */s/ Bart K. Larsen*
James Patrick Shea, Esq.
Bart K. Larsen, Esq.
Kyle M Wyant, Esq.
1731 Village Ctr Cr, Ste 150
Las Vegas, NV 89134

**LENNON MURPHY & PHILLIPS, LLC**
Patrick F. Lennon, Esq. – *pro hac vice*
Kevin J Lennon, Esq. – *pro hac vice*
420 Lexington Ave., Ste. 300
New York, NY 10170

*Attorneys for Traxys North America LLC*

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432