**E-filed: August 24, 2021**

Robert R. Kinas (NV Bar No. 6019)
Charles E. Gianelloni (NV Bar No. 12747)
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: rkinas@swlaw.com
cgianelloni@swlaw.com

*Attorneys for JPMorgan Chase Bank N.A.*

Jeremy M. Downs (IL Bar No. 6272155)
David E. Morrison (IL Bar No. 6217225)
Takayuki Ono (IL Bar No. 6321240)
*Admitted Pro Hac Vice*
GOLDBERG KOHN LTD.
55 East Monroe, Suite 3300
Chicago, IL 60603
Telephone No. (312) 201-4000
Facsimile No. (312) 863-7983
Email: Jeremy.Downs@goldbergkohn.com
David.Morrison@goldbergkohn.com
Takayuki.Ono@goldbergkohn.com

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re METAL PARTNERS REBAR, LLC,<br><br>☒ Affects this Debtor. | Case No. 20-12878-abl<br>Chapter 11 – LEAD CASE<br>(Jointly Administered) |
| In re BGD LV HOLDING, LLC,<br><br>☒ Affects this Debtor. | Case No. 20-12876-abl<br>Chapter 11 |
| In re BRG HOLDING, LLC,<br><br>☐ Affects this Debtor. | Case No. 20-12879-abl<br>Chapter 11 |
| In re BCG OWNCO, LLC,<br><br>☐ Affects this Debtor. | 20-12880-abl<br>Chapter 11 |
| TRAXYS NORTH AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>METAL PARTNERS REBAR, LLC, BGD LV HOLDING, LLC, INTERMETAL REBAR, L.L.C., JOSE CARRERO, JPMORGAN CHASE BANK N.A., and ADR REBAR, LLC,<br><br>Defendants. | **Adversary Proceeding No. 21-01005-abl**<br><br>**DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS**<br><br>**Hearing Date:** __________<br><br>**Hearing Time:** __________ |

///

///



SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
702.784.5200

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
702.784.5200

## TABLE OF CONTENTS


Page

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. BACKGROUND FACTS ..... 3

III. STANDARD OF REVIEW ..... 5

IV. LEGAL ARGUMENT ..... 5

A. Traxys cannot as a matter of law state a claim for conversion against Chase ..... 6

1. Traxys fails to sufficiently allege that it had ownership, possession, control of, or title or rights to, the disputed funds ..... 7

a) Beyond the conclusory allegations, the facts alleged in the Complaint show that Traxys does not own the disputed funds ..... 7

b) When the Customer Funds were commingled with MPR's other receipts in the Chase lockbox account, Traxys lost any ownership interests it may have had in the Customer Funds ..... 9

2. Traxys fails to allege that the money subject to conversion is specifically identifiable ..... 11

3. Traxys has not sufficiently alleged that Chase exercised an "unauthorized dominion" over its property ..... 12

B. Traxys cannot as a matter of law state a cause of action for unjust enrichment against Chase ..... 15

C. Traxys cannot as a matter of law state a cause of action for constructive trust against Chase ..... 18

V. CONCLUSION ..... 19

## TABLE OF AUTHORITIES

Page

**Cases**

*Alexander v. Irving Trust Co.*, 132 F. Supp. 364 (S.D.N.Y.) ........ 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 5, 7, 19

*Asurion Ins. Servs., Inc. v. Amp'd Mobile, Inc. (In re Amp'd Mobile, Inc.)*, 377 B.R. 478 (Bankr. D. Del. 2007) ........ 10

*Atateks Foreign Trade Ltd. v. Dente*, 798 F. Supp. 2d 506 (S.D.N.Y. 2011) ........ 18

*Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 347 F. Supp. 2d 1 (S.D.N.Y. 2004) ........ 15, 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 18

*Bigio v. Coca-Cola Co.*, 675 F.3d 163 (2d Cir. 2012) ........ 19

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, No. 10-cv-8299, 2011 WL 3847376 (S.D.N.Y. Aug. 30, 2011) ........ 8

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142 (2d Cir. 1993) ........ 8

*Burtch v. Seaport Cap., LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626 (Bankr. D. Del. 2012) ........ 16

*Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643 (9th Cir.) ........ 9

*Double Alpha, Inc. v. Mako Partners, L.P.*, No. 99-cv-11541, 2000 WL 1036034 (S.D.N.Y. July 27, 2000) ........ 11

*Dunham Tr. Co. v. Wells Fargo Bank, N.A.*, No. 18-cv-000181-LRH-WGC, 2019 WL 5684172 (D. Nev. Oct. 31, 2019) ........ 6, 11

*EBS Pension, L.L.C. v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.)*, 268 B.R. 409 (Bankr. D. Del. 2001) ........ 9, 10

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) ........ 5

*Faber v. Metro. Life Ins. Co.*, 648 F.3d 98 (2d Cir. 2011) ........ 8

*FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16-cv-5263, 2017 WL 3600425 (S.D.N.Y. Aug. 18, 2017) ........ 15, 17

*Ga. Malone & Co. v. Rieder*, 19 N.Y.3d 511, 973 N.E.2d 743 (2012) ........ 17

*Geler v. Nat'l Westminster Bank USA*, 770 F. Supp. 210 (S.D.N.Y. 1991) ........ 12

*Geraci v. Vinson*, No. 19-cv-01038, 2020 WL 2840239 (D. Nev. June 1, 2020) ........ 11

*Gillespie v. St. Regis Residence Club, New York Inc.*, No. 16-cv-9390, 2019 WL 4747185 (S.D.N.Y. Sept. 30, 2019) ........ 16

*Goldblatt v. F.D.I.C.*, 105 F.3d 1325 (9th Cir. 1997) ........ 11, 12

SNELL & WILMER L.L.P. LAW OFFICES 3883 HOWARD HUGHES PARKWAY, SUITE 1100 LAS VEGAS, NEVADA 89169 702.784.5200

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509 (2d Cir. 2001) .......... 15
*Great Minds v. Office Depot, Inc.*, 945 F.3d 1106 (9th Cir. 2019) .......... 5
*High View Fund, L.P. v. Hall*, 27 F.Supp.2d 420 (S.D.N.Y.1998) .......... 11
*HSBC Bank USA v. Lee Family Props., LLC*, No. 16-cv-644 JCM (NJK), 2017 WL 797213 (D. Nev. Mar. 1, 2017) .......... 15, 17
*In re Christensen*, 149 P.3d 40 (Nev. 2006) .......... 9
*In re Columbia Gas Sys. Inc.*, 997 F.2d 1039 (3d Cir. 1993) .......... 10
*In re Drexel Burnham Lambert Grp., Inc.*, 142 B.R. 633 (S.D.N.Y. 1992) .......... 10
*In re KI Liquidation, Inc.*, No. 08-cv-611, 2008 WL 5109369 (D.N.J. Dec. 1, 2008) .......... 9, 10
*In re Motel 6 Sec. Litig.*, No. 93-cv-2866, 1997 WL 154011 (S.D.N.Y. Apr. 2, 1997) .......... 17
*In re R & T Roofing Structures & Com. Framing, Inc.*, 887 F.2d 981 (9th Cir. 1989) .......... 9
*In re Refco Sec. Litig.*, 759 F. Supp. 2d 301 (S.D.N.Y. 2010) .......... 6
*Kirschner v. Bennett*, 648 F. Supp. 2d 525 (S.D.N.Y. 2009) .......... 13, 14
*Lake Las Vegas Dev. Grp., LLC v. SRMOF II 2012-1 Trust*, No. 13-cv-20194-GMN-VCF, 2016 WL 4443158 (D. Nev. Aug. 18, 2016) .......... 17
*Las Vegas Sands Corp. v. Suen*, No. 64594, 2016 WL 4076421 (Nev. Jul. 22, 2016) .......... 18
*Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419, 2014 WL 1280464 (S.D.N.Y. Mar. 28, 2014) .......... 16
*Leonard, Jr. v. Optimad Payments Ldd. (In re Nat'l Audit Def. Network)*, 332 B.R. 896 (Bankr. D. Nev. 2005) .......... 9, 12
*Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068 (9th Cir. 2013) .......... 5
*Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624 (2d Cir. 2004) .......... 18
*Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395 (S.D.N.Y. 2012) .......... 11
*Nwachukwu v. Chem. Bank*, No. 96-5118, 1997 WL 441941 (S.D.N.Y. Aug. 6, 1997) .......... 8, 12
*O'Toole v. Karnani (In re Trinsum Grp., Inc.)*, 460 B.R. 379 (Bankr. S.D.N.Y. 2011) .......... 16
*Peoples Westchester Sav. Bank v. F.D.I.C.*, 961 F.2d 327 (2d Cir. 1992) .......... 11
*Rosen v. Chowaiki & Co. Fine Art Ltd. (In re Chowaiki & Co. Fine Art Ltd.)*, 593 B.R. 699 (Bankr. S.D.N.Y. 2018) .......... 19

SNELL & WILMER L.L.P. LAW OFFICES 3883 HOWARD HUGHES PARKWAY, SUITE 1100 LAS VEGAS, NEVADA 89169 702.784.5200

## TABLE OF AUTHORITIES (continued)


Page

*Rubenstein v. Int'l Value Advisers, LLC*, 363 F. Supp. 3d 379 (S.D.N.Y. 2019) .......... 12

*Sayeg v. Azuly*, No. 14-cv-4096, 2016 WL 5234597 (S.D.N.Y. Aug. 12, 2016) .......... 12

*Shelstad v. TGS Aviation Servs., Inc.*, No. 16-cv-02671-KJD-CWH, 2017 WL 2870083 (D. Nev. July 5, 2017) .......... 2, 4

*Stack Elec. Inc. v. DiNardi Constr. Corp.*, 161 A.D.2d 416, 555 N.Y.S.2d 346 (1990) .......... 6

*Topaz Mut. Co. v. Marsh*, 839 P.2d 606 (Nev. 1992) .......... 15

*TransformaCon, Inc. v. Vista Equity Partners, Inc.*, No. 15-cv-337, 2015 WL 4461769 (S.D.N.Y. July 21, 2015) .......... 15

*Waldman v. Maini*, 195 P.3d 850 (Nev. 2008) .......... 18

*Washoe-Mill Apartments v. U.S. Bank Nat'l Ass'n*, No. 12-cv-00418-MMD-WGC, 2014 WL 12805156 (D. Nev. Mar. 25, 2014) .......... 12

*Xclusive-Lee, Inc. v. Hadid*, No. 19-cv-520, 2019 WL 3281013 n.8 (E.D.N.Y. July 18, 2019) .......... 7

*Yantha v. Omni Childhood Ctr., Inc.*, No. 13-cv-1948, 2013 WL 5327516 (E.D.N.Y. Sept. 20, 2013) .......... 7


**Statutes**


29 U.S.C. § 1002(21) .......... 8


**Rules**


Fed. R. Evid. 201(b) .......... 2

FRBP Rule 7012 .......... 1

FRCP 12(b)(6) .......... 1, 5


SNELL & WILMER L.L.P. LAW OFFICES 3883 HOWARD HUGHES PARKWAY, SUITE 1100 LAS VEGAS, NEVADA 89169 702.784.5200

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
702.784.5200

Pursuant to FRBP Rule 7012 and FRCP 12(b)(6), Defendant JPMorgan Chase Bank, N.A. ("Chase"),[1] by its undersigned attorneys, hereby moves to dismiss Counts 6, 9 and 10 of the Second Amended Complaint ("Complaint" or "Compl.") [Adv. ECF No. 160] filed by Plaintiff Traxys North America LLC ("Traxys"). This Motion is made and based upon the attached points and authorities, together with any argument that may be introduced at a hearing.

DATED this 24th day of August 2021.

SNELL & WILMER L.L.P.

*/s/ Robert R. Kinas*
Robert R. Kinas (NV Bar No. 6019)
Charles E. Gianelloni (NV Bar No. 12747)
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone: (702) 784-5200
Facsimile: (702) 784-5252

and

Jeremy M. Downs (IL Bar No. 6272155)
David E. Morrison (IL Bar No. 6217225)
Takayuki Ono (IL Bar No. 6321240)
*Admitted Pro Hac Vice*
GOLDBERG KOHN LTD.
55 East Monroe, Suite 3300
Chicago, IL 60603
Telephone No. (312) 201-4000
Facsimile No. (312) 863-7983

*Attorneys for JPMorgan Chase Bank N.A.*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Traxys cannot, as a matter of law, establish that it has any basis to bring its claims for conversion (Count 6), unjust enrichment (Count 9), or constructive trust (Count 10) against Chase. It is uncontested that Chase is the prepetition senior secured lender to Defendants Metal Partners Rebar, LLC, BCG Ownco, LLC, and BRG Holding, LLC (collectively, "MPR") and that MPR

[1] Capitalized terms not defined in this motion shall have the same meanings ascribed to them as defined in the Complaint.

defaulted on its contractual loan obligations to Chase, leaving a deficiency of more than $34,000,000 as of the filing date ("Filing Date"). Compl., ¶¶ 49, 65-66; ECF No. 169 at 3.[2] Traxys' claims as against Chase focus on Traxys' joint venture agreement (the "JVA") with MPR, to which Chase was not a party. Traxys alleges that MPR caused certain accounts receivable from the joint venture purportedly payable to Traxys to instead be paid directly to MPR's Chase bank accounts. Those funds were then processed in the normal course through MPR's asset-based, revolving credit facility pursuant to the prepetition secured credit agreement (the "Credit Agreement"). Compl., ¶¶ 49, & 65-66. None of these facts gives rise to the claims Traxys brings against Chase.

To maintain an interest in, and establish a conversion claim over, Customer Funds in a bank account, Traxys bears the burden of alleging that it had certain rights to the disputed funds, that the funds were specifically identifiable, and that Chase exercised an unauthorized dominion over them. Traxys has failed to adequately allege any of these elements. The alleged facts and the documents relied upon by Traxys in its Complaint show that Traxys lacked a direct interest in the disputed funds, **and** that it knew that customers were depositing the disputed funds in MPR's Chase bank account, compelling a conclusion that Traxys did not "own" the Customer Funds. Regardless, a straight-forward application of the LIBT (defined below) demonstrates that Traxys lost any rights it may have had to the disputed funds once they were deposited in MPR's collection account with Chase because the bank account was automatically and routinely swept daily to a zero balance to replenish MPR's revolving credit facility with Chase. In addition, the Complaint does not allege any non-conclusory facts demonstrating that Chase exercised unauthorized and wrongful dominion over them when Chase acted pursuant to the Credit Agreement.

Traxys' claim for constructive trust suffers from the same flaws, including its inability to specifically identify and trace the funds. Traxys also cannot establish that Chase owed it any heightened duty, let alone a fiduciary duty, which is a prerequisite to stating a claim for constructive

[2] Chase respectfully requests that the Court take judicial notice of ECF No. 11-1 (Credit Agreement). "A court may take judicial notice of any fact not subject to reasonable dispute because it is capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned." *Shelstad v. TGS Aviation Servs., Inc.*, No. 16-cv-02671-KJD-CWH, 2017 WL 2870083, at *2 (D. Nev. July 5, 2017) (citing Fed. R. Evid. 201(b)). On a motion to dismiss, "[a] court may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Id.*

SNELL & WILMER L.L.P. LAW OFFICES 3883 HOWARD HUGHES PARKWAY, SUITE 1100 LAS VEGAS, NEVADA 89169 702.784.5200

trust. In fact, Traxys fails to plead any facts establishing any relationship between Chase and Traxys as it relates to the underlying events. This Court should ignore conclusory allegations that Chase owed Traxys a fiduciary duty and dismiss the constructive trust claim.

Finally, Traxys cannot establish an unjust enrichment claim when Chase, acting soundly in its capacity as a secured lender, received payments deposited into an account specifically established by its borrower to collect payments of Chase's collateral and applied such funds in accordance with its credit facility. Because of these substantive failures, Traxys' claims against Chase fails as a matter of law, and the Court should dismiss them with prejudice.

## II. BACKGROUND FACTS

Chase entered into the secured Credit Agreement with MPR on August 3, 2018. *E.g.*, Compl., ¶ 49; *see* ECF No. 11-1 (a true and correct copy of the Credit Agreement). Pursuant to such credit facility, and as is typical of an asset-based lending arrangement, upon request, Chase regularly made revolving loans to MPR. The Credit Agreement, in relevant part, states as follows:

> **Section 2.01**. Subject to the terms and conditions set forth herein, [Chase] agrees to make Revolving Loans to [MPR] from time to time during the Availability period…. Within the foregoing limits and subject to the terms and conditions set forth herein, [MPR] may borrow, prepay and reborrow Revolving Loans.
>
> **Section 2.03(b)**. To request a Revolving Borrowing, the [MPR] Representative shall notify [Chase] of such request….
>
> **Section 2.06**. [Chase] shall make each Loan to be made available by it hereunder on the proposed date thereof available to [MPR] by promptly crediting the amounts in immediately available funds to the Funding Account(s)….

Moreover, it is typical that a borrower's cash receipts be directed into a lockbox and associated blocked account to be swept by the lender and applied to the outstanding revolving loan balance, which creates new "availability" under the revolving line for additional borrowings—creating the "revolving" nature of the credit facility. The Credit Agreement follows suit, providing that on a daily basis all such funds would be swept leaving a zero balance:

> **Section 2.09(b).** All funds deposited into any Lock Box subject to a Lock Box Agreement or into a Collateral Deposit Account will be swept on a daily basis into a collection account maintained by [MPR] with [Chase] (the "Collection Account"). [Chase] shall hold and apply funds received into the Collection Account as provided herein below.
>
> **Section 2.09(c).** All amounts deposited in the Collection Account shall be deemed received by [Chase] in accordance with Section 2.17. On each Business Day,

SNELL & WILMER L.L.P. LAW OFFICES 3883 HOWARD HUGHES PARKWAY, SUITE 1100 LAS VEGAS, NEVADA 89169 702.784.5200

> [Chase] shall apply all immediately available funds credited to the Collection Account … by depositing such funds into [MPR's] Funding Account … or …. first to prepay any Protective Advances that may be outstanding, and second to prepay the Revolving Loans ….

All of the disputed funds in the lockbox account indisputably were commingled with all other funds deposited in the lockbox account that are not in dispute. *See id.* at Section 2.09(b); Compl., ¶¶ 49, 75(e) & (f), 90 & n.5.

Traxys and MPR entered into the JVA dated March 1, 2018. Compl., ¶ 23; *see* ECF No. 39-4. Traxys admits that its joint venture ("JV") with MPR operated smoothly from March 2018 through October 2019. Compl., ¶ 37. During that time, Traxys monitored operations and could oversee JV sales and collections on a daily basis. *Id.* ¶ 39. Yet, Traxys claims that, despite its daily oversight, "some joint venture customers incorrectly paid invoice amounts directly to a dedicated bank account of MPR at Chase." *Id.* ¶ 53. Prior to August 2019, MPR undertook a payment obligation to Traxys for any of the JV customer payments deposited in MPR's Chase bank account, and paid Traxys those sums. *Id.* ¶ 54. But starting in August 2019, as MPR "began to face financial difficulties," it allegedly stopped sending Traxys payments for JV receivables. *Id.* ¶ 57. Traxys further alleges that when Chase learned in August 2019 that JV receivables had been deposited into its lockbox account, causing an over-advance under the Credit Agreement, Chase allegedly adjusted the amount of advances it provided MPR under the Credit Agreement. *Id.*

Despite MPR's alleged breaches of the JVA, "Traxys continued doing business with" MPR because MPR caused ADR [Rebar LLC] to execute the ADR Assignment in November 2019 "as security for the obligations of MPR under the JVA." *Id.* ¶¶ 59-60. Yet, beginning in January 2020, MPR then allegedly sold more inventory which Traxys claims to own "with instructions for customers to pay the invoiced amounts directly to a dedicated bank account of MPR at Chase, instead of Traxys' bank accounts, and a number of these customers paid the invoiced amounts directly to a dedicated bank account of MPR at Chase in the estimated amount of $5,247,339." *Id.* ¶ 64. On January 17, 2020, Traxys claims to have settled all of its claims against MPR and BGD "including but not limited to the joint venture customer funds improperly paid into the MPR dedicated bank accounts at Chase." *Id.* ¶¶ 73-74. Once again, Traxys accepted a payable obligation

SNELL & WILMER L.L.P. LAW OFFICES 3883 HOWARD HUGHES PARKWAY, SUITE 1100 LAS VEGAS, NEVADA 89169 702.784.5200

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
702.784.5200

from MPR, this time in the form of a "promissory note" from MPR "for all Customer Funds for all periods through January 17, 2020" and for MPR to pay Traxys a "payable in equal monthly installments over 12 months" equal to the $5,247,339. *Id.* ¶ 75(e) & (f).

Traxys claims that "Carrero, MPR, BGD and Intermetal have failed and refused to perform their obligations under the Settlement Agreement." *Id.* ¶ 87. Traxys also concedes that MPR defaulted on its loan obligations to Chase. *Id.* ¶ 65. As this Court has already found, the Debtors' prepetition debt obligation to Chase totaled more than $34,000,000 as of the Filing Date. ECF No. 169 at 3. Traxys asserts that MPR caused $13,643,208 of disputed funds to be deposited to its Chase lockbox account, Compl., ¶ 72, but Traxys claims an interest in an amount "presently estimated at not less than $9,691,844." *Id.* ¶ 154.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires the plaintiff to state a plausible claim for relief. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1109 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim has facial plausibility where it contains enough factual content to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and requires "more than a sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678. "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). A court considering a motion to dismiss should "'identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).

## IV. LEGAL ARGUMENT

Counts 6, 9, and 10 of the Complaint must be dismissed because Traxys fails to adequately plead any cause of action against Chase. Traxys' allegations against Chase are comprised of bald

assertions and legal conclusions. The well-pleaded facts show only that Chase acted pursuant to a legally enforceable loan agreement between it and MPR.

**A. Traxys cannot as a matter of law state a claim for conversion against Chase.**

The standard for establishing a conversion claim is substantially the same under New York and Nevada law. In New York, a plaintiff must allege: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *In re Refco Sec. Litig.*, 759 F. Supp. 2d 301, 327 (S.D.N.Y. 2010); *see also Stack Elec. Inc. v. DiNardi Constr. Corp.*, 161 A.D.2d 416, 417, 555 N.Y.S.2d 346, 346-47 (1990). Under Nevada law, a plaintiff must prove: "(1) the defendant committed a distinct act of dominion wrongfully exerted over the plaintiff's personal property; (2) the act was in denial of or inconsistent with the plaintiff's title or rights therein; and (3) the act was in derogation, exclusion, or defiance of the plaintiff's title or rights in the personal property." *Dunham Tr. Co. v. Wells Fargo Bank, N.A.*, No. 18-cv-000181-LRH-WGC, 2019 WL 5684172, at *4 (D. Nev. Oct. 31, 2019).

Regardless of which state's law applies, Traxys cannot state a claim for conversion against Chase because it is undisputed that the Customer Funds were deposited into a bank account established under the Credit Agreement. Chase's status as the prepetition secured lender to MPR dooms Traxys' conversion claim for three reasons. First, contrary to their allegation, the JVA does not state that Traxys had sole ownership, possession or control over the Customer Funds. In fact, the alleged facts show that Traxys merely had a derivative interest in the Customer Funds. Second, the Customer Funds are not specifically identifiable, as they were commingled with other funds in the bank account, as designed by the Credit Agreement. Third, Chase's actions taken pursuant to the Credit Agreement with respect to funds deposited into its lockbox account was by definition authorized, and, accordingly, Traxys cannot claim that Chase exercised unauthorized dominion or control of the Customer Funds.

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
702.784.5200

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
702.784.5200

***1. Traxys fails to sufficiently allege that it had ownership, possession, control of, or title or rights to, the disputed funds.***

Traxys has not alleged that it has ownership, possession, control of, or title or rights to, the disputed funds beyond its conclusory allegation that it is "entitle[d]" to certain funds because they "belong[] to" Traxys as the "legal owner" (*see*, *e.g.*, Compl., ¶¶ 51, 70, 75(d) & 152) —which is not sufficient to state a claim for conversion. Such conclusory allegations are "precisely the type of 'threadbare recitals' of an element of the cause of action, 'supported by a mere conclusory statement,' that *Twombly* and *Iqbal* instruct is insufficient."[3] *Yantha v. Omni Childhood Ctr., Inc.*, No. 13-cv-1948, 2013 WL 5327516, at *11 (E.D.N.Y. Sept. 20, 2013) (quoting *Iqbal*, 556 U.S. at 678 (2009)).

*a) Beyond the conclusory allegations, the facts alleged in the Complaint show that Traxys does not own the disputed funds.*

Traxys relies on nothing more than conclusory paraphrasing of the JVA without attaching or quoting from the JVA because the actual language in the JVA establishes that the disputed funds are *not* owned by Traxys and that Traxys merely holds a derivative interest. When the plaintiff makes a conclusory allegation about an ownership interest, the complaint fails to assert a claim for conversion if the remaining alleged facts "compel the contrary conclusion." *Yantha*, 2013 WL 5327516, at *10. In *Yantha*, the plaintiff alleged conversion of electronic accounts that the plaintiff had with insurers. The court noted that "[t]he problem with this claim is that other than the single conclusory and ambiguous allegation that the accounts 'belong[ed]' to plaintiff, all of the factual allegations in the amended complaint regarding the electronic accounts compel the contrary conclusion—that plaintiff did not own the electronic accounts." *Id*. Here, similar to the facts in *Yantha*, the Complaint's allegations "compel the contrary conclusion" that any of the funds at issue "belong[ed]" to Traxys in three ways.

[3] The Court should ignore the conclusory allegation that Traxys was the "legal owner" of the Customer Funds. *Alexander v. Irving Trust Co.*, 132 F. Supp. 364, 369 (S.D.N.Y.), *aff'd*, 228 F.2d 221 (2d. Cir. 1955) ("[P]laintiff must do more than plead the legal conclusion asserting equitable ownership"); *Xclusive-Lee, Inc. v. Hadid*, No. 19-cv-520, 2019 WL 3281013, at *4 n.8 (E.D.N.Y. July 18, 2019) ("'[A] bare assertion of ownership is the sort of legal conclusion that the Court need not accept' at the pleadings stage").

First, Traxys repeatedly relies upon misleading paraphrasing of the JVA. When determining the sufficiency of plaintiff's claim on a motion to dismiss, the Court may consider documents "either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). The actual text of the JVA expressly sets forth the rights of the parties: "Notwithstanding the fact that purchase contracts and sale contracts and invoices and inventory shall be in the name of Traxys, all such contracts, invoices and inventory will be *for the benefit and risk of the Joint Venture*[.]" ECF No. 39-4, § 4.2 (emphasis added). In other words, the accounts receivable from the inventory and finished product—the disputed funds at issue—are decidedly *not* Traxys' direct property. In this regard, Traxys was an agent or fiduciary for the JV of which it was only one member.[4]

Second, even though the JVA expressed that "all financial transactions for and on behalf of the Joint Venture (including all receipts of and payments to and by the Joint Venture) . . . be effected through the bank accounts of Traxys," ECF No. 39-4, § 4.5, Traxys alleges that it was aware that JV customer payments were deposited to MPR's bank account at Chase prior to October 2019. Compl., ¶ 53. Rather than stop the activity, Traxys permitted MPR to continue it so long as MPR undertook the obligation to pay Traxys for the incorrectly deposited Customer Funds. *Id.* ¶ 54. By doing so, Traxys assumed a simple creditor-debtor relationship with MPR inconsistent with the right of a party who claimed to have exclusive ownership rights in the Customer Funds. *See*, *e.g.*, *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 106 (2d Cir. 2011) ("We believe that, under ordinary notions of property rights, this relationship involves MetLife simply as a debtor and the beneficiary-turned-account holder simply as a creditor—a relationship fundamentally different from an ERISA fiduciary relationship with its panoply of discretionary authority and responsibility, *see* 29 U.S.C. § 1002(21).").

Third, any funds deposited with a bank become the *bank's* property, eviscerating any claim that Traxys could even have to specific deposited funds. *See*, *e.g.*, *Nwachukwu v. Chem. Bank*, No.

[4] At most, Traxys held a derivative interest in the funds under the JVA. But Traxys is suing for its own losses and not for the benefit of the JV—foreclosing any possibility of having standing to bring the conversion claim. *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, No. 10-cv-8299, 2011 WL 3847376, at *8 (S.D.N.Y. Aug. 30, 2011).

SNELL & WILMER L.L.P. LAW OFFICES 3883 HOWARD HUGHES PARKWAY, SUITE 1100 LAS VEGAS, NEVADA 89169 702.784.5200

SNELL & WILMER L.L.P. LAW OFFICES 3883 HOWARD HUGHES PARKWAY, SUITE 1100 LAS VEGAS, NEVADA 89169 702.784.5200

96-5118, 1997 WL 441941, at *5 (S.D.N.Y. Aug. 6, 1997) ("[F]unds deposited in a bank become the property of the bank. . . . Therefore, a conversion claim, predicated on the unlawful use of funds belonging to another, is not sustainable. . . ."); *Leonard, Jr. v. Optimad Payments Ldd. (In re Nat'l Audit Def. Network)*, 332 B.R. 896, 909 n.10 (Bankr. D. Nev. 2005) ("Under Nevada law, once possession of money is given to a bank, the money becomes property of the bank.").

Since Traxys cannot show that it owned the disputed funds in the full and direct way that the law requires, or that it maintained the immediate right of possession to them after acquiescing to MPR's ongoing receipt of them and after MPR caused them to be deposited with Chase, Traxys cannot bring a claim for conversion.

*b) When the Customer Funds were commingled with MPR's other receipts in the Chase lockbox account, Traxys lost any ownership interests it may have had in the Customer Funds.*

Regardless of whether Traxys had any ownership or possessory interest in the Customer Funds pursuant the JVA, the lowest intermediate balance test ("LIBT") dictates that when Chase swept the funds deposited in the MPR collection account to zero on a daily basis, Traxys lost any right of ownership or title it may have to any funds deposited therein.[5] The LIBT states as follows:

> "Where a wrongdoer mingles another's money with his own, from which commingled account withdrawals are from time to time made, there is a presumption of law that the sums first withdrawn were moneys of the tortfeasor". . . . If the amount on deposit is depleted below the amount of the trust, however, the amount withdrawn is treated as lost, and subsequent deposits do not replenish the trust. Thus, the beneficiary is entitled to the lowest intermediate balance between the date of the commingling and the date of payment.

*Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 662 (9th Cir.), *cert. denied*, 140 S. Ct. 223 (2019) (citing *In re R & T Roofing Structures & Com. Framing, Inc.*, 887 F.2d 981, 987 (9th Cir. 1989)); *see also In re Christensen*, 149 P.3d 40, 50 (Nev. 2006) (recognizing the LIBT as the predominant method courts use when tracing funds with respect to conversion actions); *EBS*

[5] While the case law on LIBT is most applicable to the conversion claim, it should be applied to all claims pleaded against Chase, as they all claim money damages from the commingled account at Chase. Applying the LIBT to the well-pleaded facts, and those undisputed facts concerning the Credit Agreement of which this Court should take judicial notice, "zero is the lowest intermediate balance of the alleged trust funds in the commingled [lender] account, and [Traxys] can recover *nothing*." *In re KI Liquidation, Inc.*, No. 08-cv-611, 2008 WL 5109369, at *8 (D.N.J. Dec. 1, 2008) (emphasis added).

*Pension, L.L.C. v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.)*, 268 B.R. 409, 413 (Bankr. D. Del. 2001) ("Courts often use the LIBT to identify trust proceeds which have been commingled in a bank account.").

Here, Traxys admits that even with its oversight it allowed the Customer Funds to be commingled with other monies when deposited into MPR's Chase bank account. When, as occurred here, an account is "swept" and left with a zero balance on a periodic basis to pay off a secured lender's obligation, courts apply the LIBT and find that the original funds are lost and thus incapable of being replaced through future deposits. *See In re Edison Bros.*, 268 B.R. at 414; *see also In re Drexel Burnham Lambert Grp., Inc.*, 142 B.R. 633, 638 (S.D.N.Y. 1992) (applying the LIBT and holding that "[t]he law is clear that as a significant corollary to the tracing and intermediate balance rules, if the funds in the commingled account are completely dissipated, there is no *res* to discover."); *Asurion Ins. Servs., Inc. v. Amp'd Mobile, Inc. (In re Amp'd Mobile, Inc.)*, 377 B.R. 478, 490 (Bankr. D. Del. 2007) (applying New York law and finding that "[t]he Debtor's practice of utilizing concentration accounts and daily sweeps renders it a practical impossibility for any party to trace, track or follow particular monies, beyond retained account balance amounts, after they enter the Debtor's cash management system."); *In re KI Liquidation, Inc.*, 2008 WL 5109369, at *3 (rejecting argument that funds deposited with bank were held in trust for a trade vendor and had been "wrongfully converted" when the lender swept the account, holding that the vendor "failed to show that the alleged trust funds, which were commingled, were clearly traceable or identifiable.").

Additionally, in sweeping MPR's account funds, Chase took actions that were expressly permitted under the Credit Agreement, which, together with the related loan documents, brings Chase under the protection of the UCC as a secured creditor. Consistent with these UCC protections, the imposition of a tracing obligation on a plaintiff protects "the interests of secured and unsecured creditors." *In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1063 (3d Cir. 1993). The LIBT favors the protections and certainties the test provides to secured creditors over a plaintiff's equitable claim of harsh or unfair outcomes like Traxys asserts here – especially when Traxys was

SNELL & WILMER L.L.P. LAW OFFICES 3883 HOWARD HUGHES PARKWAY, SUITE 1100 LAS VEGAS, NEVADA 89169 702.784.5200

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
702.784.5200

in a better position to know (and admits that it did know) that MPR was receiving receipts from JV customers.

### 2. *Traxys fails to allege that the money subject to conversion is specifically identifiable.*

Traxys' conversion claim against Chase should be dismissed because it is a claim for money, which is not specifically identifiable. "[I]f the allegedly converted money is incapable of being described or identified [in the same manner] as a specific chattel, it is not the proper subject of a conversion action." *Double Alpha, Inc. v. Mako Partners, L.P.*, No. 99-cv-11541, 2000 WL 1036034, at *4 (S.D.N.Y. July 27, 2000) (citations omitted); *accord*. *Dunham*, 2019 WL 5684172, at *4 ("[M]oney cannot be the subject of a conversion claim unless it is sufficiently identifiable."). To survive a motion to dismiss, the plaintiff must allege ownership of a "'specifically identifiable, segregated' fund." *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 409 (S.D.N.Y. 2012) (granting motion to dismiss where plaintiff alleged conversion of money charged to her debit card and not a specific segregated amount of money); *High View Fund, L.P. v. Hall*, 27 F.Supp.2d 420, 429 (S.D.N.Y.1998) ("Because plaintiffs do not claim ownership of a specifically identifiable, segregated [fund], they fail to state a claim for conversion of money.") (citation omitted); *accord*. *Geraci v. Vinson*, No. 19-cv-01038, 2020 WL 2840239, at *3 (D. Nev. June 1, 2020) ("[T]he claim fails as Plaintiff does not allege facts identifying how this cash was earmarked or whether it was in a separate account.").

Here, the allegedly converted funds are not equivalent to specific chattel. In fact, the disputed funds were periodically swept to zero from a commingled bank account, which is far from a specifically identifiable, segregated amount. Further, Traxys fails to and cannot allege that there was a specific, segregated bank account containing only the funds at issue, but instead the funds were deposited into MPR's general bank account with Chase. *See*, *e.g.,* Compl., ¶¶ 64, 70-72, 89, 90 & n.5. "[A] deposit made in the ordinary course of business is presumed to be general," *Peoples Westchester Sav. Bank v. F.D.I.C.*, 961 F.2d 327, 330 (2d Cir. 1992) (citation omitted); *accord*. *Goldblatt v. F.D.I.C.*, 105 F.3d 1325, 1328 (9th Cir. 1997), and general deposits are "not sufficiently specific and identifiable, in relation to the bank's other funds, to support a claim for

conversion against the bank." *Geler v. Nat'l Westminster Bank USA*, 770 F. Supp. 210, 215 (S.D.N.Y. 1991); *accord*. *In re Nat'l Audit Def. Network*, 332 B.R. at 909 ("[A] deposit or bank account is not shorthand for the bank's holding of specific funds and currency in its vault."). Traxys fails to bear its burden of overcoming the presumption that the funds were general deposits in Chase accounts. *See Nwachukwu*, 1997 WL 441941, at *6; *Goldblatt*, 105 F.3d at 1328. For these reasons, Traxys fails to show that Chase converted a specifically identifiable sum of money, and its claim for conversion must accordingly be dismissed.

***3. Traxys has not sufficiently alleged that Chase exercised an "unauthorized dominion" over its property.***

Traxys' conclusory allegation that Chase "without lawful justification exercised an unauthorized dominion over" *Traxys*' property, Compl., ¶ 148, fails to adequately support a claim for relief. First, for the reasons addressed above, the property at issue was not Traxys' property and for this reason alone, the conversion claim fails. *Washoe-Mill Apartments v. U.S. Bank Nat'l Ass'n*, No. 12-cv-00418-MMD-WGC, 2014 WL 12805156, at *4 (D. Nev. Mar. 25, 2014) (finding that plaintiff cannot demonstrate that a bank wrongfully exerted dominion over plaintiff's money where plaintiff did not own the funds). Even then, there was nothing unauthorized about Chase's actions.

As an initial matter, whether something was "authorized" is a legal conclusion that "[t]he Court is not bound to accept [as fact]. . . when there have been no facts elicited to support that assertion." *Sayeg v. Azuly*, No. 14-cv-4096, 2016 WL 5234597, at *7 (S.D.N.Y. Aug. 12, 2016); *see also Rubenstein v. Int'l Value Advisers, LLC*, 363 F. Supp. 3d 379, 395 (S.D.N.Y. 2019) ("The Complaint's allegation that Doe 'agreed to' and 'authorized' IVA's 'strategy' with respect to DeVry is the sort of unsupported 'label' or 'legal conclusion[ ]' which the Court need not accept as fact."), *aff'd*, No. 19-cv-560, 2020 WL 2549507 (2d Cir. May 20, 2020).

In any event, the factual allegations in the Complaint contradict any notion of "unauthorized dominion" over the funds at issue. Traxys alleges that Chase "extended a secured revolving loan [] to MPR and certain of its affiliates pursuant to which Chase provided financing for certain MPR business operations unrelated to the JVA and received a security interest in the assets of MPR and certain of its affiliates." Compl., ¶ 49. Traxys further concedes that MPR was in default of this

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
702.784.5200

ES

secured loan, *see id.* ¶ 66. Finally, Traxys concedes that the disputed funds were deposited into MPR's lockbox account at Chase. *See id.* ¶ 90 & n.5. Those are incontrovertible facts and the Court may take judicial notice of the Credit Agreement's terms and of its prior findings of fact on this topic. Traxys' own allegations thus create a lawful justification for Chase—in its role as MPR's prepetition secured lender—to exercise dominion over any funds deposited into a collateral collection account, which by definition contradicts Traxys' allegation that the dominion was "unauthorized."

Traxys attempts to muddy the waters by claiming that Chase "significantly restricted new advances to MPR under the Chase Loan." Compl., ¶ 57. But this falls far short of alleging any unauthorized dominion of the funds. Traxys does not and cannot allege that Chase stopped making new advances to MPR beginning in August 2019. In fact, because the well-pleaded facts acknowledge that Chase continued to provide MPR with a revolving line of credit to operate its business based on eligible receivables consistent with the Credit Agreement through the Filing Date, and because MPR (not Chase) had undertaken a payment obligation to "pa[y] over" improperly disbursed funds to Traxys, Traxys cannot claim that Chase exercised unauthorized dominion over any property. The well-pleaded allegations show that while MPR continued to operate its business through the loaned funds it requested and received from Chase under the revolving line of credit, MPR allegedly failed to use those loaned funds to pay Traxys what MPR owed it—which falls far short of stating a claim that Chase exercised any unauthorized dominion over the disputed funds.

Additionally, *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 543-44 (S.D.N.Y. 2009), shows that Traxys cannot maintain an action for conversion against Chase because Chase and MPR were parties to the Credit Agreement and there is no allegation that Chase's actions with regard to all funds deposited in the MPR collection account were in any way inconsistent with its rights under the Credit Agreement. In *Kirschner*, the trustee of Refco Private Actions Trust sued certain Refco insiders on behalf of Refco's customers, alleging that they were liable for conversion because they "improperly siphoned" assets from the customers' foreign exchange brokerage accounts to prop up other Refco entities with cash infusions. The court found that such an allegation is "decisively

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
702.784.5200

underwhelming" because the customer agreement governing the relationship between Refco and the customers specifically authorized Refco to "loan, pledge, hypothecate or otherwise dispose of" the customers' cash "until settlement in full of all Transactions entered into pursuant to the [customer agreement]." *Id.* The court stated that "no conversion could occur… unless it took place *outside of* the terms established by" the customer agreement. *Id.* Holding that the trustee failed to state a cause of action for conversion, the court noted that the trustee "must make *some* factual allegations as to when and how [Refco] transferred their specifically identifiable assets from their accounts to the Refco affiliates in order for the Court to" draw the reasonable inference that the defendant exercised unauthorized dominion over the customers' funds. *Id.*

Here, the Credit Agreement provided for a revolving credit facility and a collection account in which all collections of MPR were deposited. *See* ECF No. 11-1 at §§ 2.09; 2.17. The undisputed facts and Traxys' allegations show that Chase was simply acting pursuant to a lawful agreement by sweeping all funds deposited in the bank account and applying them to the revolving credit facility—much like the lawful conduct of the broker in *Kirschner*. Pursuant to the Credit Agreement, *all* funds deposited into the collection account were "swept on a daily basis into a collection account maintained by [MPR] with [Chase]." *Id.* at § 2.09(b). On each business day, Chase was required to hold and apply "all immediately available funds" received into the collection account "by depositing such funds into the Borrower's Funding Account, or… first to prepay any Protective Advances that may be outstanding, and second to prepay the Revolving Loans …." *Id.* at § 2.09(c). Consequently, it was up to MPR (and Traxys) to ensure that any funds that were not intended to be swept and applied to the Chase loan balance in accordance with a standard revolving loan collection and funding process were in the first instance not deposited into the lockbox account. The fact that the funds were *automatically* swept once deposited into the lockbox and applied pursuant to the Credit Agreement explicitly authorizing such an action is fundamentally inconsistent with any showing that Chase's acts were an exercise of unauthorized dominion of the Customer Funds.

For all of these reasons, the Court should dismiss the conversion claim pleaded in Count 6 with prejudice.

SNELL & WILMER L.L.P. LAW OFFICES 3883 HOWARD HUGHES PARKWAY, SUITE 1100 LAS VEGAS, NEVADA 89169 702.784.5200

**B. Traxys cannot as a matter of law state a cause of action for unjust enrichment against Chase.**

Traxys has not stated, and cannot state, a claim for unjust enrichment against Chase under either New York or Nevada Law. Under New York Law, "the plaintiff must allege '(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or [benefit] to the plaintiff.'" *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 347 F. Supp. 2d 1, 3-4 (S.D.N.Y. 2004) (citing *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 519 (2d Cir. 2001)). Additionally, because "unjust enrichment is a claim in quasi-contract, it requires some relationship between plaintiff and defendant." *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16-cv-5263, 2017 WL 3600425, at *16 (S.D.N.Y. Aug. 18, 2017). Under Nevada law, to state a valid claim for unjust enrichment, a plaintiff must allege three elements: "(1) *plaintiff* conferred a *benefit* on defendant; (2) defendant appreciated such benefit; and (3) defendant accepted and retained the benefit." *HSBC Bank USA v. Lee Family Props., LLC*, No. 16-cv-644 JCM (NJK), 2017 WL 797213, at *2 (D. Nev. Mar. 1, 2017) (citing *Topaz Mut. Co. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992)) (emphasis added). Traxys' unjust enrichment claim fails at each step of the analysis under both New York and Nevada law.

Under New York law, Traxys' conclusory allegation in Count 9 that Chase was "unjustly enriched" fails to plead facts sufficient to support a finding that Chase was "enriched." *See TransformaCon, Inc. v. Vista Equity Partners, Inc.*, No. 15-cv-337, 2015 WL 4461769, at *6 (S.D.N.Y. July 21, 2015) (dismissing a claim for unjust enrichment when plaintiff did not plead "*how*" defendant was enriched by plaintiff's performance). Here, Traxys does not explain how Chase was enriched. Given that MPR defaulted on its loan obligations to Chase and the regular pay down and new advances made at the borrower's request that occurs in a revolving credit facility, Chase could not have been "enriched" unless Chase failed to loan MPR money that MPR (1) requested, and (2) was entitled to receive after applying the Credit Agreement's borrowing base formula. But no such allegation has been asserted against Chase.

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
702.784.5200

Likewise, Traxys fails to allege how or why any alleged enrichment would be "unjust." *O'Toole v. Karnani (In re Trinsum Grp., Inc.)*, 460 B.R. 379, 396 (Bankr. S.D.N.Y. 2011) (dismissing unjust enrichment claim because complaint did not infer that the actions were "unjust"). As explained in detail above, Chase's actions were consistent with the Credit Agreement, and such actions do not show or infer anything "unjust." *See Burtch v. Seaport Cap., LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626, 661 (Bankr. D. Del. 2012) (dismissing unjust enrichment count because defendant exercised its rights under a loan, and such action "is not an impoverishment to the Debtor or any creditor or an unjust enrichment.").

Nor does Traxys sufficiently allege that Chase's routine sweeping of the collection account pursuant to the Credit Agreement, including any JV Customer Funds MPR caused to be deposited in such account, was at *Traxys'* expense. *See Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419, 2014 WL 1280464, at *13 (S.D.N.Y. Mar. 28, 2014) (finding that conclusory assertion that unlawful acts caused "[p]laintiff… to suffer injury" was insufficient for unjust enrichment claim). "A complaint does not state a cause of action in unjust enrichment if it fails to allege that defendant received something of value *which belongs to the plaintiff*." *Bazak Int'l Corp.*, 347 F. Supp. 2d at 4 (emphasis added). Traxys cannot show that the alleged enrichment was at its expense because, as described in Section IV.A.2., *infra*, Traxys cannot establish that the money belonged to Traxys either before or in particular after it was deposited into a Chase account.

Third, Traxys' conclusory allegation that it is "against equity and good conscience" to permit Chase to "keep" the Customer funds fails to plead facts sufficient to support such a finding. *Gillespie v. St. Regis Residence Club, New York Inc.*, No. 16-cv-9390, 2019 WL 4747185, at *5 (S.D.N.Y. Sept. 30, 2019) (finding that the complaint failed to satisfy the third element of unjust enrichment claim where defendants simply retained the fruits of their own investments and plaintiff pleaded no entitlement to the assets at issue). Here, as described in detail in Section IV.A.2., *infra*, Traxys cannot plead entitlement to the relevant funds because it fails to plead ownership of a specifically identifiable, segregated fund. Meanwhile, the Customer Funds were lawfully received by Chase pursuant to the Credit Agreement. Moreover, the very nature of the revolving loan meant that MPR continued to request loans from Chase and Chase continued to advance MPR funds –

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
702.784.5200

thus, Traxys has not shown that Chase "kept" any particular amounts in dispute. Indeed, Chase had more than $34,000,000 in outstanding loans to MPR as of the Filing Date, which is more than four times what Traxys claims Chase owes it for Customer Funds deposited in the lockbox account. ECF No. 169 at 3. Traxys cannot run from the indisputable fact that Chase loaned MPR more than enough money for MPR to pay Traxys whatever amount MPR legitimately owed Traxys. Consequently, Traxys has failed to allege that Chase "kept" any funds, much less that Chase's operation of the Credit Agreement's collection and revolving loan facility was "against equity and good conscience."

Finally, Traxys' unjust enrichment claim in Count 9 is insufficient as a matter of law because it fails to allege *any* relationship between Traxys and Chase. "[W]hile a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment, there must exist a relationship or connection between the parties that is not too attenuated." *FrontPoint*, 2017 WL 3600425, at *16 (quotations and citation omitted). An unjust enrichment claim requires "some type of direct dealing or actual, substantive relationship" between the plaintiff and defendant. *In re Motel 6 Sec. Litig.*, No. 93-cv-2866, 1997 WL 154011, at *7 (S.D.N.Y. Apr. 2, 1997). Yet, for the reasons set forth in Section IV.C., *supra*, Traxys fails to allege *any* direct dealing or relationship between it and Chase—let alone an "actual, substantive" one. *Id.*; *Ga. Malone & Co. v. Rieder*, 19 N.Y.3d 511, 511-12, 973 N.E.2d 743 (2012).

Traxys fares no better under Nevada law. Traxys' claim fails as a matter of law at the first step of the analysis in Nevada because Traxys cannot allege that *Traxys*, *as plaintiff*, conferred any benefit on Chase. *HSBC Bank USA*, 2017 WL 797213, at *2 (dismissing unjust enrichment claim without further analysis because "the purported benefits at issue are not those that plaintiff, through its own actions, bestowed upon defendant"). Traxys does not allege that *it* deposited any funds in Chase accounts. In fact, Traxys does not allege that *any* party conferred any benefit on Chase, opting to use the passive voice to describe the alleged injustice. Compl., ¶ 173 ("Chase would be unjustly enriched if permitted to retain the Customer Funds or any of the benefits accruing therefrom."). Traxys further fails to allege that there was any "benefit" conferred on Chase, which Nevada courts have defined to mean "any form of advantage." *Lake Las Vegas Dev. Grp., LLC v.*

SNELL & WILMER L.L.P. LAW OFFICES 3883 HOWARD HUGHES PARKWAY, SUITE 1100 LAS VEGAS, NEVADA 89169 702.784.5200

*SRMOF II 2012-1 Trust*, No. 13-cv-20194-GMN-VCF, 2016 WL 4443158, at *3 (D. Nev. Aug. 18, 2016) (citing *Las Vegas Sands Corp. v. Suen*, No. 64594, 2016 WL 4076421, at *3 (Nev. Jul. 22, 2016)). Since Traxys does not allege that Chase did anything other than enforce its contractual rights as MPR's prepetition lender, Traxys makes no allegation that anyone conferred a "benefit" upon Chase that Chase was not entitled to under the Credit Agreement. In short, mere adherence to its contractual rights and remedies does not provide Chase any "advantage." For this reason alone, Traxys' unjust enrichment claim fails under Nevada law.[6] For all of these reasons, the Court should dismiss Traxys' unjust enrichment claim against Chase with prejudice.

**C. Traxys cannot as a matter of law state a cause of action for constructive trust against Chase.**

As a final matter, Traxys fails in Count 10 to plead facts showing that it is entitled to imposition of a constructive trust against Chase. "Under New York law, the equitable remedy of a constructive trust is appropriate when there is clear and convincing evidence of (1) a confidential or fiduciary relationship; (2) an express or implied promise; (3) a transfer in reliance on such a promise; and (4) unjust enrichment." *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 646 (2d Cir. 2004). Under Nevada law, imposition of a constructive trust requires a plaintiff to prove that: "(1) a confidential relationship exists between the parties; (2) retention of legal title by the holder thereof against another would be inequitable; and (3) the existence of such a trust is essential to the effectuation of justice." *Waldman v. Maini*, 195 P.3d 850, 857 (Nev. 2008). Similar to New York, Nevada courts also "at least require [] unjust enrichment" before imposing a constructive trust. *Id*. Traxys has not properly pleaded, and cannot plead, any of these elements to justify imposing a constructive trust against Chase.

First, Traxys fails to allege that Traxys and Chase had *any relationship at all*, contractual or otherwise, with respect to the underlying events—let alone a confidential or fiduciary relationship—which is fatal to its claim for a constructive trust. *See*, *e.g., Atateks Foreign Trade Ltd. v. Dente*, 798 F. Supp. 2d 506, 507 (S.D.N.Y. 2011). The closest Traxys gets to alleging a relationship between Traxys and Chase is a conclusory allegation that Chase owed a "fiduciary

[6] For the same reasons, Traxys fails to "nudge[] its claims [against Chase] across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
702.784.5200

obligation" for the relevant funds without stating the basis for claiming that Chase owes such an obligation, Compl., ¶ 180, which "do[es] not suffice," *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173-74 (2d Cir. 2012) (citing *Iqbal*, 556 U.S. at 677-78).

Second, Traxys fails to allege that Chase made any express or implied promises to Traxys, or that Traxys transferred any property in reliance upon such promise. To the contrary, Traxys does not allege that *any* communication took place between Chase and Traxys prior to February 28, 2020. Compl., ¶ 105. Nor does the Complaint allege that *Traxys* ever transferred any property to Chase.

Third, Traxys does not plead that retention of legal title in the Customer Funds Chase received under the Credit Agreement would be inequitable as it relates to Chase, or that the existence of a constructive trust is essential to the effectuation of justice. How could it, when MPR owed Chase significantly more money than any amount in dispute in this action.

Last, as explained in detail in Section IV.B., *infra*, Traxys fails to plead facts to support a finding of unjust enrichment, "which is the predicate injury for the remedy of a constructive trust." *Rosen v. Chowaiki & Co. Fine Art Ltd. (In re Chowaiki & Co. Fine Art Ltd.)*, 593 B.R. 699, 722 (Bankr. S.D.N.Y. 2018) ("[A]bsense of unjust enrichment, standing alone, is fatal to a request for a constructive trust…."). For all of these reasons, Traxys has not alleged a claim for constructive trust under New York or Nevada law, and the claim should be dismissed with prejudice.

## V. CONCLUSION

Any damage Traxys has suffered was due to its own failure to properly monitor its relationship with MPR and MPR's failure to fulfill any payment obligations MPR may have owed Traxys. Traxys may not upend Article 9's priority of security interests, or turn common law principles protecting secured creditors on their heads, just to seek recompense from a deep pocket. Chase cannot be held liable for acting in its capacity as MPR's secured creditor and enforcing its

///

///

SNELL & WILMER L.L.P. LAW OFFICES 3883 HOWARD HUGHES PARKWAY, SUITE 1100 LAS VEGAS, NEVADA 89169 702.784.5200

rights under the Credit Agreement. Therefore, the Court should dismiss the Second Amended Complaint with prejudice.

DATED this 24th day of August 2021.

SNELL & WILMER L.L.P.

*/s/ Robert R. Kinas*

Robert R. Kinas (NV Bar No. 6019)
Charles E. Gianelloni (NV Bar No. 12747)
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone: (702) 784-5200
Facsimile: (702) 784-5252

and

Jeremy M. Downs (IL Bar No. 6272155)
David E. Morrison (IL Bar No. 6217225)
Takayuki Ono (IL Bar No. 6321240)
*Admitted Pro Hac Vice*
GOLDBERG KOHN LTD.
55 East Monroe, Suite 3300
Chicago, IL 60603
Telephone No. (312) 201-4000
Facsimile No. (312) 863-7983

*Attorneys for JPMorgan Chase Bank N.A.*

SNELL & WILMER
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
702.784.5200